**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; FORT WORTH CHAMBER OF COMMERCE; LONGVIEW CHAMBER OF COMMERCE; AMERICAN BANKERS ASSOCIATION; CONSUMER BANKERS ASSOCIATION; and TEXAS ASSOCIATION OF BUSINESS, | |
| Plaintiffs, | Case No. 4:24-CV-213-P |
| v. | |
| CONSUMER FINANCIAL PROTECTION BUREAU; and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau, | |
| Defendants. | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON VENUE AND
RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.      DEFENDANTS' MOTION FOR TRANSFER SHOULD BE DENIED.............. 2

        A.     VENUE IS PROPER IN THE FORT WORTH DIVISION OF THE NORTHERN DISTRICT OF TEXAS .............................................. 2

        B.     DEFENDANTS HAVE NOT SATISFIED THEIR BURDEN OF PROOF THAT THE SUIT SHOULD BE TRANSFERRED TO THE DISTRICT OF COLUMBIA ............................................................ 3

           1.     THE PRIVATE-INTEREST FACTORS DO NOT FAVOR TRANSFER TO THE DISTRICT OF COLUMBIA .................... 4

           2.     THE PUBLIC-INTEREST FACTORS DO NOT FAVOR TRANSFER TO THE DISTRICT OF COLUMBIA .................... 8

        C.     DEFENDANTS' POSITION WOULD HAVE SWEEPING IMPLICATIONS FOR APA CHALLENGES ....................................... 10

II.     TRANSFER, IF NECESSARY, WOULD BE MOST APPROPRIATE TO ANOTHER TEXAS DISTRICT COURT ........................................................... 14

CONCLUSION.................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Career Colleges & Schools of Texas v. U.S. Dep't of Educ.*,
  2023 WL 2975164 (Apr. 17, 2023) ...................................................................8

*Chamber of Com. v. U.S. Dep't of Labor*,
  885 F.3d 360 (5th Cir. 2018) ........................................................................12

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) .............................................................1, 3, 9, 10

*Community Financial Services Ass'n of America v. CFPB*,
  No. 1:18-cv-00295-LY (W.D. Tex.) ...............................................................12

*Cook Cnty., Illinois v. Wolf*,
  19-cv-06334, Sept. 23, 2019, ECF No. 1 .......................................................11

*Cook County, Illinois v. Wolf*,
  498 F. Supp. 3d 999 (N.D. Ill. 2020) ............................................................11

*Def. Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ......................................................................3, 10

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*,
  968 F.3d 454 (5th Cir. 2020) ........................................................................12

*Hunt v. Washington State Apple Advertising Comm'n*,
  432 U.S. 333 (1977)......................................................................................12

*Institute for Free Speech v. Johnson*,
  2023 WL 7420281 (N.D. Tex. Nov. 8, 2023).................................................5

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) .......................................................................4, 9

*In re Radmax Ltd.*,
  720 F.3d 285 (5th Cir. 2013) .........................................................................5

*Restaurant Law Center v. U.S. Dep't of Labor*,
  66 F.4th 593 (5th Cir. 2023) ..........................................................................7

*Texas v. United States*,
  95 F. Supp. 3d 965 (N.D. Tex. 2015) ........................................................2, 14

*Time, Inc. v. Manning*,
    366 F.2d 690 (5th Cir. 1966) ........................................................................3

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ...................................................................3, 4

**Statutes**

15 U.S.C. § 1604(d) .........................................................................................7

28 U.S.C. § 1341(e)(1) ...................................................................................10

28 U.S.C. § 1391(e)(1)(B) ......................................................................1, 2, 14

28 U.S.C. § 1391(e)(1)(C) ..........................................................................1, 14

28 U.S.C. § 1404(a) ........................................................................1, 8, 10, 15

42 U.S.C. § 1983 ..............................................................................................5

42 U.S.C. § 1988 ..............................................................................................5

**Other Authorities**

89 Fed. Reg. 19128 (Mar. 15, 2024) ...............................................................8

Federal Case Management Statistics—Comparison Within Circuit, U.S. Courts,
    https://www.uscourts.gov/file/78411/download ........................................11

Form 10-K, J.C. Penney Company, Inc. at 1, 13, available at
    https://www.sec.gov/Archives/edgar/data/1166126/000116612620000022/jcp-
    0201202010k.htm ....................................................................................15

Fort Worth Chamber Business Directory Search,
    https://business.fortworthchamber.com/list; ...............................................12

https://investors.synchrony.com/filings-regulatory/sec-filings/all-sec-
    filings/content/0001601712-24-000047/0001601712-24-000047.pdf; 2020 ..........................15

Longview Chamber Business Directory,
    https://members.longviewchamber.com/directory ......................................13

## INTRODUCTION

Plaintiffs, the Chamber of Commerce of the United States of America, Fort Worth Chamber of Commerce, Longview Chamber of Commerce, American Bankers Association, Consumer Bankers Association, and Texas Association of Business, filed a complaint challenging CFPB's recently published Credit Card Penalty Fees Rule in this Court pursuant to 28 U.S.C. §§ 1391(e)(1)(B) and (C).  This Court requested expedited briefing on venue under 28 U.S.C. § 1404(a) from both parties on March 18, 2024, and, in the alternative, invited Defendants to file a motion pursuant to that provision.  In response, Defendants moved to transfer venue to the United States District Court for the District of Columbia pursuant to 28 USC § 1404(a).  Plaintiffs respectfully submit that denying the motion to transfer would best serve both the convenience of the parties and the interests of justice.  The public and private interest factors do not outweigh the deference to Plaintiffs' choice of venue in this case, especially where two of Plaintiffs' declarants have over ten percent of their total receivables from Texas, with over 800,000 cardholders combined in the Fort Worth region.  App. 3-4, Decl. of Matthew Mahar ¶¶ 6, 9; App. 7, Joint Decl. of Baron Schlachter and Bruce Bowman Decl. ¶ 7.  If this Court disagrees and believes that a transfer is appropriate, Plaintiffs respectfully request a transfer to the Tyler Division of the Eastern District of Texas, where Plaintiff Longview Chamber of Commerce resides and where harm from the Final Rule is similarly being felt.  Finally, if this Court nevertheless decides to transfer the case to the District of Columbia, Plaintiffs respectfully request that this Court stay the order to afford Plaintiffs time to seek appellate review.  *See In re Clarke*, 94 F.4th 502, 507 n.1 (5th Cir. 2024) (commending a district judge for "stat[ing] his plan to hold future 'order[s] to transfer venue for a short period in the event a party wishes to challenge the transfer'").

1

## ARGUMENT

**I.    Defendants' motion for transfer should be denied**

**A.  Venue is proper in the Fort Worth Division of the Northern District of Texas**

Venue in actions against the CFPB and Director of the CFPB is proper in "any judicial district in which … the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1)(C).  No real property is implicated in this administrative challenge, and Plaintiff Fort Worth Chamber resides in this District and Division.  *See* App. to Pls.' Mot. for Prelim. Inj. 21, Decl. of Steve Montgomery ¶ 4 (ECF No. 5).  Plaintiff Fort Worth Chamber has further demonstrated that it has associational standing to pursue this challenge on behalf of its members, and thus it can serve as the party supporting venue.  *See* Reply in Supp. of Mot. for Prelim. Inj. 3-5.  Therefore, venue is proper in the Northern District of Texas and this Division.

Furthermore, venue is proper against agencies and their officers in "any judicial district in which … a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(e)(1)(B).  This Court and others have held that "a substantial part of the events or omissions giving rise to the claim[s]" take place where an unlawful rule imposes its burdens.  *See, e.g.*, *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (O'Connor, J.) (finding venue proper under § 1391(e)(1) in a challenge to a Department of Labor rulemaking regulating employment because one plaintiff employed people in the district), *injunction dissolved on other grounds*, 2015 WL 13424776 (N.D. Tex. June 26, 2015).  Here, Plaintiffs' members issue credit card accounts to consumers residing in the Fort Worth Division of the Northern District of Texas, *see* App. to Pls.' Mot. for Prelim. Inj. 3, Decl. of Bruce Bowman ¶ 5 (ECF No. 5); App. to Pls.' Mot. for Prelim. Inj. 44, Decl. of Baron Schlachter ¶ 5 (ECF No. 5); App. to Pls.' Mot. for Prelim. Inj. 57, Decl. of Matthew Susser ¶ 4 (ECF No. 5), and are therefore subject to the burdens of the Final Rule in that same Division and District.  Given that a Plaintiff resides in this district and "a substantial part of

2

the events or omissions giving rise to the claim[s]" occur in this District and Division via the imposition of the Rule's burdens, venue is proper in this Court.

### B. Defendants have not satisfied their burden of proof that the suit should be transferred to the District of Columbia

A plaintiff's choice of venue is entitled to deference. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"); *see also Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir. 1966) ("[P]laintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed. Plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed.") (internal quotation omitted). Therefore, a defendant moving to transfer venue bears the heavy burden of "clearly demonstrat[ing]" that its chosen venue is "clearly more convenient," not merely "more likely than not to be more convenient." *In re Clarke*, 94 F.4th at 508. "Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). Thus, the party moving for transfer must show that "the marginal gain in convenience will be *significant*" and that "those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th at 508.

More specifically, district courts in the Fifth Circuit must consider eight factors when weighing whether the moving party carried its burden. The four private-interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive," *Def. Distributed*, 30 F.4th at 433-34, and the public-interest factors are "([5]) the administrative difficulties flowing from court congestion; ([6]) the local interest in having localized interests decided at home; ([7])

3

the familiarity of the forum with the law that will govern the case; and ([8]) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law," *id.* at 435.

Here, Defendants have not demonstrated that these factors weigh so heavily in favor of transfer that they outweigh the deference due to Plaintiffs' choice of venue, or even that they weigh in favor of transfer at all.

### 1. The private-interest factors do not favor transfer to the District of Columbia

As an initial matter, Defendants contend that the location of the record justifies transfer "to the place where the agency made the decision," but the cases they cite for this proposition come from outside this Circuit. Br. in Supp. of Mot. to Transfer 7. That is hardly surprising given that, under Fifth Circuit precedent, location of the record does not support transfer in circumstances like these, where the record is largely electronic. *See In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (finding that where "the vast majority of the evidence was electronic, and therefore equally accessible in either forum," the first factor weighed against transfer). And Defendants have not identified any physical evidence located in the District of Columbia that would be needed to resolve this suit. *Compare with Volkswagen II*, 545 F.3d at 315 (noting that "[a]ll of the documents and physical evidence relating to [an] accident [we]re located in the Dallas Division").

Defendants have also identified no need for compulsory process to secure the attendance of unwilling witnesses. *See id.* They do not contest that the merits of Plaintiffs' statutory authority and arbitrary and capricious claims can be decided on the text of the statute and administrative record. Nor have they contested that, to the extent oral testimony on standing or irreparable harm is required, the relevant witnesses for standing and injury would be drawn from here in Texas and

4

around the country, not concentrated in any one division. *Contra id.* at 316 (where "a proper venue that does enjoy *absolute* subpoena power for both depositions and trial" was available).

Nor is Defendants' argument about reducing attorneys' fees and travel costs persuasive in a case like this one, where each party bears its own costs and Plaintiffs have elected to proceed in Texas. The CFPB cites *Institute for Free Speech v. Johnson*, 2023 WL 7420281, at *3 (N.D. Tex. Nov. 8, 2023) (Pittman, J.), where this Court found that attorneys' fees and travel costs weighed in favor of transfer. Br. in Supp. of Mot. to Transfer at 8. But that was a case brought under 42 U.S.C. § 1983, where attorneys' fees and costs were explicitly requested pursuant to 42 U.S.C. § 1988. Forcing the defendants to bear the cost of the *plaintiffs*' attorneys' fees and travel costs in that case would have been a far more significant imposition than expecting the CFPB to bear the costs of its own attorneys attending a hearing to defend its Rule in this Court.

Finally, the potential delay in resolving Plaintiffs' motion for preliminary injunction weighs heavily against transfer. *See In re Radmax Ltd.*, 720 F.3d 285 (5th Cir. 2013) (recognizing that "[t]he delay associated with transfer may be relevant in rare and special circumstances"). Here, unlike the vast majority of cases, which can proceed upon a more ordinary time frame, Plaintiffs have sought preliminary injunctive relief to protect their members from ongoing irreparable harm. Plaintiffs have acted diligently in pursuing such relief on an expedited schedule. To force them to begin seeking such relief again in another district court would not serve the interests of justice.

Contrary to the CFPB's arguments, Plaintiffs cannot be charged with any delay in seeking preliminary injunctive relief. As discussed above, they filed in a venue that they believed was proper. Moreover, the CFPB's assertion that Plaintiffs overstate the gravity and immediacy of irreparable harm, *see* Br. in Supp. of Mot. to Transfer 8, is simply wrong. The rule requires updated

paper and electronic disclosures for millions of cardholders. Every large credit card issuer with paper credit card agreements, marketing materials, and other documents disclosing their late fees must ensure that all of the disclosures are updated and delivered to the banks and other credit card issuers for deployment by May 14, 2024. And paper credit card applications are not nearly so passé as the CFPB would have this Court believe. *See* Br. in Supp. of Mot. to Transfer 9 & n.4. Synchrony Bank ("Synchrony"), for example, took in 20 million paper applications in 2023. App. 4, Mahar Decl. ¶ 10. One of the nation's largest third-party processors has explained that ordering and printing new disclosure materials typically takes four months when done on an issuer-by-issuer basis and would take much longer with 95% of the industry forced to act at once. App. to Pls.' Mot. for Prelim. Inj. 62, Letter from Kimberly Ford 2 (ECF No. 5). As a result, credit card issuers must begin revising their disclosures right *now*. *See* App. to Pls.' Mot. for Prelim. Inj. 7, Decl. of Kelly Hall ¶ 7 (ECF No. 5); App. to Pls.' Mot. for Prelim. Inj. 21, Montgomery Decl. ¶ 7 (ECF No. 5); App. to Pls.' Mot. for Prelim. Inj. 29, Decl. of David Pommerehn ¶ 8 (ECF No. 5); App. to Pls.' Mot. for Prelim. Inj. 36, Decl. of Thomas Quaadman ¶ 8 (ECF No. 5); App. to Pls.' Mot. for Prelim. Inj. 49, Decl. of Jess Sharp ¶ 8 (ECF No. 5). Delaying resolution of the Plaintiffs' expedited motion for preliminary injunctive relief to facilitate a discretionary transfer will unquestionably result in irreparable harm to Plaintiffs' members. *See* Br. in Supp. of Mot. for Prelim. Inj. 20-25.

The CFPB disputes that issuers must immediately begin the process of updating their printed materials, pointing out that one issuer was able to send updated notices on a slightly quicker timetable to reflect the last inflation adjustment of the safe harbor amount. Br. in Supp. of Mot. to Transfer 9-10. This fact does nothing to undermine Plaintiffs' point. In fact, that issuer was able to deploy updated notices on that timeline only because it anticipated the inflation adjustment and

began preparatory work *five months* before the CFPB announced the new safe harbor amount and *six months* before it sent updated printed materials to customers.  *See* App. 9, Suppl. Decl. of Baron Schlachter ¶ 10.  In that example, the CFPB's regulations required the CFPB to update the safe harbor amounts annually according to changes in the Consumer Price Index, and the Consumer Price Index released in May 2021 indicated that an adjustment would be necessary.  As a result, even though the CFPB did not announce the adjusted safe harbor amount until November 2021, the issuer was able to begin preparing for the change in July 2021 and send updated printed materials to customers in December 2021.  *See id.*  The issuer knew precisely what the adjusted safe harbor would be because the formula for an inflation adjustment is public.  *See id.*  By contrast, Plaintiffs and their members did not know what safe harbor number the CFPB would finalize until March 5, 2024.[1]  *See, e.g.*, *id.* ¶ 11.  Contrary to the CFPB's assertion, it takes months to approve, order, print, and deliver updated printed materials.  Indeed, that is why Congress provided that a regulation requiring a change in printed disclosures must have an effective date that stretches at least six months from the date of promulgation—a requirement that the CFPB has ignored in this case.  *See* 15 U.S.C. § 1604(d).

The CFPB's arguments about the issuers' ability to attempt to recoup their costs at a later date likewise fails.  While issuers will certainly attempt to ensure that their businesses run profitably regardless of the ultimate success of this litigation, the relevant point for irreparable harm is that they are being forced to incur costs *now* that they will never be able to recoup from the government.  *See Restaurant Law Center v. U.S. Dep't of Labor*, 66 F.4th 593, 598 (5th Cir. 2023) ("Even purely economic costs may count as irreparable harm 'where they cannot be

---

[1] Though the Notice of Proposed Rulemaking proposed an $8 safe harbor, CFPB received comments both in support and in opposition to this proposal.  *See* Credit Card Penalty Fees (Regulation Z), 89 Fed. Reg. at 19152.  Plaintiffs could not be sure what safe harbor provision would be found in the Final Rule until it was published.

recovered in the ordinary course of litigation" (internal quotation marks omitted)).  And the costs that would be incurred from sending change-of-term notices to try to mitigate damages from the Final Rule—as the CFPB suggested issuers could do—is harm that flows directly from trying to comply with the Final Rule.  *See* Credit Card Penalty Fees (Regulation Z), 89 Fed. Reg. 19, 128, 19,149 (Mar. 15, 2024) ("Larger Card Issuers generally can adjust other fees or interest rates in order to recover any lost revenue."); *see also, e.g.*, App. to Pls.' Mot. for Prelim. Inj. 4, Bowman Decl. ¶ 9 (ECF No. 5) (describing how one issuer will incur losses on accounts that would never have been issued but for "reli[ance] on the CFPB's previously set safe harbor amounts" that "every dollar" lost is "lost, forever, and irreparably" because the issuer "will not be able to recoup the money from the CFPB or the cardholders").  Plaintiffs' irreparable harm is plainly pressing, and the delay that would be caused by a transfer at least weighs against granting the CFPB's motion at this point in the litigation.  In sum, none of the private-interest factors weighs in favor of transfer to the District of Columbia, and one factor weighs against transfer at this point.  *See Career Colleges & Schools of Texas v. U.S. Dep't of Educ.*, 2023 WL 2975164, at *3 (Apr. 17, 2023) (Pittman, J.) ("Regarding Section 1404(a) and APA cases, the private-interest factors are usually neutral as these cases generally involve only questions of law and require no merits discovery or testimony to resolve the case.").

### 2.  The public-interest factors do not favor transfer to the District of Columbia

The public-interest factors are generally no more favorable to Defendants' motion.  The sole public-interest factor that may weigh in favor of a transfer is court congestion. Plaintiffs recognize that the Fort Worth Division has a busier docket than the District of Columbia.  *See* Ord., Mar. 20, 2024 (ECF No. 51) (explaining that in the Northern District of Texas "there were 473 pending cases per judgeship" at the end of the 2023 compared to 427 in the District of

Columbia).  But the Fifth Circuit has also expressly held that court congestion alone is not a sufficient basis for transfer because it would undermine the "weight" due to a plaintiff's choice and "ignores the plaintiffs' role as master of the complaint."  *In re Clarke*, 94 F.4th 502, 515 (5th Cir. 2024).  And, as the Fifth Circuit commented earlier this month in assessing a motion to transfer from a federal district court in Texas to the District of Columbia, "it would be a stretch to say that court congestion 'favors D.D.C.' and not just transfer 'somewhere else.'" *In re Clarke*, 94 F.4th at 515.

Turning to localized interests, the CFPB admits that this factor is at best "neutral" toward their motion.  Br. in Supp. of Mot. 12.  Plaintiffs agree that, because the policy at issue has national implications, this is "not the sort of localized case where the citizens of [the District of Columbia] have a greater 'stake' in the litigation than the citizens of [Fort Worth]." *See In re Planned Parenthood Fed'n of Am. Inc.*, 52 F.4th 625, 632 (5th Cir. 2022).  That said, to the extent that "the location of the injury, witnesses, and the plaintiffs' residence are useful proxies for determining what local interests exist in each venue," *In re Clarke* 94 F.4th at 511, those factors weigh in favor of keeping the case in Texas, where fully half of the Plaintiffs reside.  Though Defendants claim that "the location of witnesses favors D.C., as indicated above," what Defendants *actually* argued was that the location of *counsel* favors the District of Columbia.  But the location of counsel is not a useful proxy for determining what local interests are at stake in the action.

Finally, Defendants argue that the District of Columbia is better equipped to adjudicate APA claims, an argument Defendants support exclusively with out of circuit case law.  For good reason, as that argument is in serious tension with precedent from the Fifth Circuit and this Court. The Fifth Circuit, for example, has said that it was improper for a district court considering venue to weigh the fact that Texas judges would have to apply New Jersey law in favor of transfer because

"[f]ederal judges routinely apply the law of a State other than the State in which they sit" and the court was "not aware of any exceptionally arcane features of Texas, [New Jersey, or constitutional law,] that are likely to defy comprehension by a federal judge sitting in [Texas]." *Defense Distributed* 30 F.4th at 436. This principle is all the more true with respect to federal law like the APA, which is routinely adjudicated by district courts in this circuit, including by this Court. Indeed, this Court recognized as much when ruling on a transfer motion in another case. Op. & Ord., 4:23-cv-00206, Apr. 17, 2023 (ECF No. 33) ("[T]he Western District is familiar with the APA because it is a federal district court in Texas."). This Court is plainly familiar with the APA and equally as competent to rule upon this case as a federal judge in the District of Columbia.

In sum, the only public-interest factor that Defendants identified that might support transfer is court congestion. Plaintiffs appreciate the burdens of this Court's docket, but as noted above, the Fifth Circuit has made clear that "§ 1404(a) transfer cannot be granted solely because of court congestion." *In re Clarke*, 94 F.4th at 515. And Defendants simply cannot show that any of the other factors weigh in favor of transfer here. The private interest factors are *at best* neutral (and Plaintiffs believe that delay relating to resolution of their motion for preliminary injunction weighs strongly against), and the public-interest factors besides court congestion are too. "When the transferee venue is not *clearly* more convenient than the venue chosen by the Plaintiff, the Plaintiffs' choice should be respected." *Def. Distributed*, 30 F.4th at 433.

### C. Defendants' position would have sweeping implications for APA challenges

As Plaintiffs have previously argued, if transfer of this case to the District of Columbia is warranted, it is hard to see how any APA challenges would remain in this Circuit. Defendants have not shown that *any* of the factors, aside from court congestion, would weigh in favor of transfer to the District of Columbia. And just as the venue statute contemplates, 28 U.S.C. § 1341(e)(1), cases are routinely brought by plaintiffs against officers of the United States in the

jurisdictions within which they reside, including in courts with crowded dockets.  For example, one of the cases Defendants cite to show that APA challenges may be brought in district courts outside of the District of Columbia, *Cook County, Illinois v. Wolf*, 498 F. Supp. 3d 999 (N.D. Ill. 2020), is based on the same theory of venue that Plaintiffs rely on here.  In *Cook County*, the plaintiff brought suit in that district because plaintiff "[wa]s a resident of this judicial district" "and because a substantial part of the events or omissions giving rise to the claims occurred in this district."  *Cook Cnty., Illinois v. Wolf*, 19-cv-06334, Sept. 23, 2019, ECF No. 1 (¶ 12).  This is precisely the basis upon which Plaintiff Fort Worth Chamber in the instant case seeks venue in this District and which Defendants argue is improper.  And as of December 2023, the Northern District of Illinois had a total caseload of 831 active cases per judgeship, 798 of which were civil cases.  *See* Federal Case Management Statistics—Comparison Within Circuit, U.S. Courts, https://www.uscourts.gov/file/78411/download.  Yet the case proceeded in that district.

The argument that Plaintiffs' connection to their choice of venue is somehow more attenuated than Cook County's is also misplaced.  Defendants assert that plaintiffs challenging agency action may do so only in (a) the District of Columbia, where the rule was promulgated and the agency resides, or (b) the district where a plurality of the plaintiffs are located *and*, in the case of association plaintiffs, where at least one of those plaintiffs' members is *headquartered*.  That position has sweeping, and troubling, implications for organizations litigating on behalf of their members under a theory of associational standing.  It also contravenes well-established precedent.

The Supreme Court has held that an association may bring suit on behalf of injured members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).  The relevant venue statutes draw no distinction between plaintiffs pursuing their own claims and those pursuing claims on behalf of their members.

As a result, trade associations routinely bring suit within this Circuit, when a handful of members, or even a single member, reside or do business here, as is their right under the venue and joinder rules.  *See, e.g.*, *Chamber of Com. v. U.S. Dep't of Labor*, 885 F.3d 360 (5th Cir. 2018) (Chamber of Commerce joined with several national trade associations, the Texas Association of Business, the Greater Irving-Las Colinas Chamber of Commerce, the Lake Houston Chamber of Commerce, and the Lubbock Chamber of Commerce to challenge the Department of Labor's Fiduciary Rule); *Community Financial Services Ass'n of America v. CFPB*, No. 1:18-cv-00295-LY, Dkt. 1, at 6-7, Dkt. 42-1, 42-2, 42-3 (W.D. Tex.) (a Maryland-based trade association, whose member declarants did not reside in the District, joined with a Texas-based trade association to challenge a rule issued by the CFPB); *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454 (5th Cir. 2020) (two Louisiana-based membership associations joined with membership associations based in Florida, Texas, Alabama, and the District of Columbia to bring suit in the Eastern District of Louisiana challenging an aquaculture rule issued by the National Marine Fisheries Service).

These trade associations also frequently seek relief on behalf of members who are not headquartered in the location of the trade association.  That is neither unusual, nor improper.  The U.S. Chamber, for example, represents businesses across the Country.  App. to Pls.' Mot. for Prelim. Inj. 36, Quaadman Decl. ¶ 4 (ECF No. 5).  And state and local chamber associations routinely represent businesses who do business in their states or locales, though headquartered elsewhere.  Even a brief perusal of the public membership lists of Plaintiffs Fort Worth Chamber

and Longview Chamber confirms the point.  *See* Fort Worth Chamber Business Directory Search, https://business.fortworthchamber.com/list;    Longview    Chamber    Business    Directory, https://members.longviewchamber.com/directory.

Nor are Plaintiffs' connections to this division as tenuous as Defendants claim.  Indeed, Synchrony, which Defendants dismiss as a Utah-based bank with "no connection" to the Fort Worth Chamber of Commerce, Br. in Supp. of Mot. to Transfer 16, has *significant connections* to Texas and to Fort Worth.  As of December 31, 2023, approximately eleven percent of Synchrony's total outstanding loan receivables were from Texas (the highest amount of any state), App. 4, Mahar Decl. ¶ 9, and Synchrony has approximately 6.4 million unique cardholders in Texas, including approximately 600,000 in the Fort Worth Division, *id.* ¶ 6.  By contrast, only 0.1% of Synchrony's total outstanding loan receivables were from D.C. (less than any other state), and Synchrony has only approximately 71,000 cardholders in the District of Columbia.  *Id.*  ¶¶ 6, 9.  And Synchrony's retail partners have approximately 4,000 locations in the Fort Worth Division. *Id.*  ¶ 7.  Likewise, as of December 31, 2023, Comenity Bank and Comenity Capital Bank had a combined 253,000 unique cardholders in the Fort Worth Division, compared to only 40,000 within the District of Columbia.  App. 7, Schlachter and Bowman Joint Decl. ¶ 7.  And approximately 10% of their receivables were from the State of Texas, the second highest amount of any state, compared to just 0.1% from the District of Columbia.  *Id.* ¶ 9.  Defendants' argument that Plaintiffs have somehow abused their privilege by bringing suit in this District and Division ignores the real harm that will be felt in Fort Worth as a result of this Rule, and that the Fort Worth Chamber has a legitimate interest in challenging it.

**II.    Transfer, if necessary, would be most appropriate to another Texas district court**

Should this Court nevertheless determine either that venue is improper or that transferring this case would best serve the interests of justice and the convenience of the parties, Plaintiffs respectfully request that the Court transfer the case to the Tyler Division of the Eastern District of Texas.

As discussed above, venue is proper in agency challenges like this one in "any judicial district in which … the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1)(C). Plaintiff Longview Chamber of Commerce resides in the Tyler Division of the Eastern District of Texas, and therefore venue would be proper. *See* App. 4, Hall Decl. ¶ 4. Venue would also be proper in the Tyler Division of the Eastern District of Texas as a "judicial district in which … a substantial part of the events or omissions giving rise to the claim occurred" 28 U.S.C. § 1391(e)(1)(B), because the Rule imposes its burdens on Plaintiff Longview Chamber of Commerce's members in that District and Division. *See Texas,* 95 F. Supp. 3d at 973. Moreover, as this Court itself recognized, the Tyler Division has the same number of active judges as this Court, but only about a tenth of the population of Fort Worth. Ord., Mar. 20, 2024 (ECF No. 51).

The Tyler division also has a greater connection to the suit than does the District of Columbia. Synchrony, a member of the Fort Worth Chamber, has an order of magnitude more cardholders in the Tyler Division than in the District of Columbia, for example. App. 3, Mahar Decl. ¶ 6; *see also* App. 7, Schlachter and Bowman Decl. ¶ 7 (explaining that Comenity and Comenity Capital Bank together have more than double the number of cardholders in the Tyler Division than in the District of Columbia). Likewise, Synchrony has twice as many relationships with retail partners in the Tyler Division than in the District of Columbia, App. 3, Mahar Decl. ¶ 7, several of whom have headquarters in Texas, *id.* ¶ 8. For their part, Comenity and Comenity

Capital Bank serve 5,793 client locations in Texas, compared to only 51 in the District of Columbia.  App. 7, Schlachter and Bowman Joint Decl. ¶ 8.

There are other districts of course, connected to the Plaintiffs, where a suit could likely have been brought and to which this Court could conceivably transfer the case.  The District of Utah, where two of the three bank declarants in this case are based, is one example.  *See* App. to Pls.' Mot. for Prelim. Inj. 55, Susser Decl. ¶ 2 (ECF No. 5); App. to Pls.' Mot. for Prelim. Inj. 2, Bowman Decl. ¶ 2 (ECF No. 5).  The Sherman Division of the Eastern District of Texas, where there is a substantial amount of banking activity and one of Synchrony's largest retail partners is headquartered and thus would suffer harm flowing from the Rule, is another.  *See* 2023 Form 10-K, Synchrony Financial 10k at 9, *available at* https://investors.synchrony.com/filings-regulatory/sec-filings/all-sec-filings/content/0001601712-24-000047/0001601712-24-000047.pdf; 2020 Form 10-K, J.C. Penney Company, Inc. at 1, 13, available at https://www.sec.gov/Archives/edgar/data/1166126/000116612620000022/jcp-0201202010k.htm ( "Reductions in income and cash flow from our marketing and servicing arrangement related to our private label and co-branded credit cards could adversely affect our operating results and cash flows.").  And the Austin Division of the Northern District of Texas, where the Texas Association of Business resides, is a third.

Because Plaintiff Longview Chamber of Commerce resides in the Tyler Division and has a public membership list, the bank declarants have established significantly greater harm in the Tyler Division than in the District of Columbia, and the Tyler Division may be less congested than this Court, transfer there would seem to be an appropriate response to any concerns about venue under 28 U.S.C. § 1404(a) in this Division.

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer should be denied.  Alternatively, the Court should transfer the case to the Tyler Division of the Eastern District of Texas.  In the event this Court decides to transfer this case to the District of Columbia, Plaintiffs respectfully request a stay of any such transfer order to allow Plaintiffs to seek review of such order.


Dated:  March 25, 2024                                      Respectfully submitted,

 /s/ Michael Murray
Michael Murray
D.C. Bar No. 1001680
*Admitted Pro Hac Vice*
michaelmurray@paulhastings.com
Tor Tarantola
D.C. Bar No. 1738602
*Admitted Pro Hac Vice*
tortarantola@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1730

 /s/ Derek Carson
Philip Vickers
Texas Bar No. 24051699
pvickers@canteyhanger.com
Derek Carson
Texas Bar No. 24085240
dcarson@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800

***Attorneys for Plaintiffs***

Thomas Pinder
D.C. Bar No. 451114
*Admitted Pro Hac Vice*
tpinder@aba.com
Andrew Doersam
D.C. Bar No. 1779883
*Admitted Pro Hac Vice*
adoersam@aba.com
AMERICAN BANKERS ASSOCIATION
1333 New Hampshire Ave. NW
Washington, DC 20036

***Attorneys for Plaintiff American Bankers Association***


Jennifer B. Dickey
D.C. Bar No. 1017247
*Admitted Pro Hac Vice*
Jdickey@uschamber.com
Maria C. Monaghan
D.C. Bar No. 90002227
*Admitted Pro Hac Vice*
mmonaghan@uschamber.com
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

***Attorneys for Plaintiff Chamber of Commerce of the United States of America***

17

**CERTIFICATE OF SERVICE**

I certify that on March 25, 2024, a true and correct copy of the foregoing document was served on counsel of record via this Court's ECF system.

/s/ Derek Carson
Derek Carson

18