UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA, ET AL.,**

  Plaintiffs,

v.                                              No. 4:24-cv-00213-P

**CONSUMER FINANCIAL PROTECTION
BUREAU, ET AL.,**

  Defendants.

## OPINION & ORDER

Before the Court is Plaintiffs' Motion for Preliminary Injunction. ECF No. 3. For the reasons below, the Court **GRANTS** the preliminary injunction and **STAYS** the Consumer Financial Protection Bureau's ("CFPB") amendment to Regulation Z, 12 C.F.R. § 1206 ("Final Rule").

## BACKGROUND

In January 2022, President Biden's appointed CFPB Director Rohit Chopra issued a bulletin characterizing credit card late fees as "junk fees." A few weeks later, the CFPB issued a request for information from consumers to give their viewpoints and assist in determining whether such fees should bear that taxonomy. Before receiving responses, on June 22, 2022, the CFPB issued advance notice of proposed rulemaking requesting information on card issuers' costs and the deterrent effects of late fees. The CFPB gave card issuers thirty days to respond, with a ten-day extension added thereafter. They declined card issuers' requests for additional extensions.

On February 1, 2024, the Biden administration announced new regulations and legislative proposals designed to combat the labeled junk fees. One of these, the Final Rule at issue in this case, would reduce the late-fee safe harbor from $30 to $8, would no longer adjust this amount for inflation, and would reduce the cap on late fees to twenty-

five percent of the missed minimum payment. The Final Rule was presented on March 5, 2024—just two days before President Biden's State of the Union Address—and is slated to go into effect on May 14.[1]

On March 7, 2024, the Chamber of Commerce of the United States of America, along with the Longview and Fort Worth Chambers of Commerce, the American Bankers Association, the Consumer Bankers Association, and the Texas Association of Business sued the CFPB and Director Rohit Chopra in this Court. Their complaint alleges violations of the Appropriations Clause and separation of powers, as well as violations of the APA, CARD and Dodd-Frank Acts. Accordingly, they seek a declaratory judgment that the Final Rule violates the APA. That same day, they filed a Motion for Preliminary Injunction to stay the Final Rule from going into effect, accompanied with an emergency motion for an expedited briefing schedule. Plaintiffs did not request the issuance of a Temporary Restraining Order. However, Plaintiffs asked the Court for a ten-day turnaround on their request for injunctive relief. After filing, Plaintiffs' case played musical chairs: it was originally filed before Senior Judge Terry Means, it was then reassigned to Judge Reed O'Connor, Judge O'Connor recused from the case, and it was reassigned the undersigned. This case's procedural history gets even more abstruse after that.

After an initial review of the record, on Monday, March 18, a mere two business days after receiving the case, the undersigned ordered the parties to file supplemental briefing to determine whether the Fort Worth Division of this Court is the appropriate venue for this case.[2] In response, Plaintiffs filed a motion on March 19 asking the Court to consider their request for injunctive relief before assessing venue. That motion informed the Court that it need not worry about venue and

---

[1] Importantly, the Court offers no opinion and has no opinion as to whether the CFPB's Final Rule reducing the credit card late fee cap is good or bad policy, as that is irrelevant to the Court's analysis.

[2] It has been the Court's standard practice as both a state and federal trial judge to ask for briefing on venue as early as possible in a case when it appears from a cursory review of the pleadings, as here, that the ties to the Fort Worth Division are attenuated., *See, e.g., Progressive Cnty. Mut. Ins. Co. v. Keechi Transp., LLC*, No. 4:22-CV-00533-P, 2022 WL 17095927 (N.D. Tex. Nov. 21, 2022) (Pittman, J.).

requested a ruling on Plaintiffs' preliminary injunction by Friday, March 22. The motion also stated that Plaintiffs would seek appellate review if the Court did not rule on the preliminary injunction by March 22, arguing any later decision would "effectively deny" their request for injunctive relief because they must provide printed notice to millions of customers by March 26. It is again worth mentioning that the Final Rule does not go into effect until May 14 and no TRO was requested by Plaintiffs.

The following day, on March 20, the Court denied Plaintiffs' expedited motion, explaining that the Court, per its longtime docket-management practice, must first determine whether venue is proper before ruling on an injunction that may not appropriately be before it. The next day, Defendants filed their Motion to Transfer the case to the United States District Court for the District of Columbia. Four days later, as pledged, Plaintiffs filed an interlocutory appeal of the Court's "effective denial" of their expedited preliminary injunction. On March 26, the Court ordered the parties to meet and prepare a proposed scheduling order, set a hearing on the preliminary injunction for April 2 (the Court's first available opportunity), and ordered the parties to attend mediation by April 19. However, on March 28, having found venue improper here, the Court transferred the case to the District of Columbia. The Fifth Circuit stayed that order so it could hear oral arguments on Plaintiffs' mandamus motion. The Fifth Circuit then granted mandamus relief, ordering that this case be reopened in Fort Worth on April 8. Thereafter, at 9:53 p.m. on April 30, the Fifth Circuit released an opinion in which they held that this Court had indeed "effectively denied" Plaintiffs' expedited motion for preliminary injunction. The Fifth Circuit maintains jurisdiction over the appeal but ordered a limited remand directing this Court to make particularized findings on the preliminary injunction's merits by May 10, bringing us here.

If the timeline seems hard to follow, the Court agrees. Here is a helpful visual of the timeline spanning from the filing of Plaintiffs' case until the date the Final Rule goes into effect:



## LEGAL STANDARD

"To be entitled to a preliminary injunction, a movant must establish (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest." *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015) (quoting *Trottie v. Livingston*, 766 F.3d 450, 452 (5th Cir. 2014)). The burden of persuasion on all requirements is on the movant party. *See Big Tyme Invs., LLC v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021). As such, if the movant fails to establish any of the above elements, the Court must deny a preliminary injunction. *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). That's because preliminary injunctions are "an extraordinary and drastic remedy." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

4

## ANALYSIS

**A. Preliminary Injunction**

Plaintiffs contend that they are entitled to a preliminary injunction for two main reasons: 1) the Final Rule was promulgated with funds drawn in violation of the Appropriations Clause; and 2) the Final Rule violates the CARD Act, TILA, and APA. *See* ECF No. 4 at 14–15. While Plaintiffs make compelling arguments under the CARD Act, TILA, and APA, the Court need not address them because the Fifth Circuit has held that the CFPB's funding structure is unconstitutional. Based on that precedent, and as further explained below, a preliminary injunction is warranted here.

    1. <u>Likelihood of Success on the Merits</u>

To obtain a preliminary injunction, Plaintiffs must show a substantial likelihood of success on the merits. *See Ladd*, 777 F.3d at 288. They do. In *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, the Fifth Circuit held that Congress's decision to abdicate its appropriations power to the CFPB violates the Constitution's structural separation of powers. *See* 51 F.4th 616, 623 (5th Cir. 2022). Under the CFPB's novel self-funding scheme, the CFPB requests and receives a self-determined amount of funding directly from the Federal Reserve, which is itself funded outside the appropriations process through bank assessments. Thus, the CFPB is double-insulated from Congress's appropriations power. *See id.* at 638–39. Because the CFPB promulgated its Payday Lending Rule through the use of unconstitutional funds, the Fifth Circuit vacated the rule. *See id.* at 643. The CFPB petitioned for a writ of certiorari, which the Supreme Court granted last February. *See CFPB v. Cmty. Fin. Services Ass'n of Am., Ltd.*, 143 S. Ct. 978 (2023). The Supreme Court has yet to issue a ruling on the appeal.

Here, Plaintiffs argue that the CFPB's junk fee Final Rule should be stayed under the reasoning endorsed by *Cmty. Fin. Servs. Ass'n*, as it was promulgated under the same funding regime. *See* ECF No. 4 at 14–15. The Court agrees. The Fifth Circuit has held that the CFPB's double-

insulated funding scheme is unconstitutional. *See* 51 F. 4th at 626. Consequently, any regulations promulgated under that regime are likely unconstitutional as well. Thus, Plaintiffs establish a likelihood of success on the merits.

2. <u>Threat of Irreparable Harm</u>

Because preliminary injunctions are an "extraordinary and drastic remedy," *see Callaway*, 489 F.2d at 573, Plaintiffs don't get one just because they are likely to succeed on the merits. In any context, injunctive relief "is not a remedy which issues as of course." *Id*. But case law has long recognized that constitutional violations are irreparable. *See Nuziard v. Minority Bus. Dev. Agency*, 2024 WL 965299 at *44 (N.D. Tex. Mar. 5, 2024) (Pittman, J). The issue isn't so much that Plaintiffs' injury could never be repaired by damages, but that damages for their injury could not practicably be measured. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Because damages could not be computed that compensate for Plaintiffs' subjugation to an unconstitutional rule, Plaintiffs establish this injunctive-relief factor.

3. <u>Balance of Interests</u>

The last two elements in the injunctive-relief analysis "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court must first examine "the relative harm to both parties if the injunction is granted or denied." *Def. Distrib. v. U.S. Dep't of State*, 838 F.3d 451, 459 (2016). If the Court denies an injunction here, Plaintiffs face an enormous undertaking based upon a potentially unconstitutional rule. *See generally* ECF No. 4. If the Court grants an injunction, the CFPB is relatively unaffected because the Final Rule has not yet gone into effect. But the Court must still assess public interests. For this consideration, "it's unclear whether an injunction must further public interests or preserve the status quo." *Nuziard*, 2024 WL 965299, at *45. The Fifth Circuit usually goes with the "do-no-harm" approach, so the Court applies it here. *See, e.g., Defense Distrib.*, 838 F.3d at 457. Again, as the Final Rule has not yet gone into effect, the status quo would necessarily be preserved by granting injunctive relief. *See Wenner*

6

*v. Tex. Lottery Comm'n,* 123 F.3d 321, 326 (5th Cir. 1997) ("It is well settled that the issuance of a prohibitory injunction freezes the status quo, and is intended 'to preserve the relative positions of the parties until a trial on the merits can be held.' Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned." (citation omitted) (quoting *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981)).

For the above reasons, the Court **GRANTS** Plaintiffs' Motion for a Preliminary Injunction (ECF No. 3) and **STAYS** the CFPB's amendment to Regulation Z, 12 C.F.R. § 1206.[3]

\* \* \*

## B. The Court's Case Management

Having made particularized findings on the preliminary injunction, the Court must address concerns laid out in the Fifth Circuit's recent opinions. *See* ECF Nos. 77, 81. In particular, the majority stated the undersigned "did not act promptly with regard to the Chamber's motion for a preliminary injunction." ECF No. 81 at 7. The Court must respectfully disagree with its appellate court colleagues that it did not act "promptly" or was otherwise dilatory or sluggish in its resolution of the preliminary injunction. The preliminary injunction had been pending for seven days when it reached the undersigned's docket, as the Motion was filed on March 7 and the case was transferred from Judge

---

[3] For the record, the Court clarifies an issue that has gone unaddressed, but that the Court did not make findings on before initially transferring the case, due to the truncated nature of the record. Much was argued by the CFPB concerning standing of the Fort Worth Chamber of Commerce to bring this suit. *See* ECF No. 23 at 15–19. The Court wants to make clear that the Fort Worth Chamber of Commerce *does* qualify for associational standing. In support of this holding, the Court adopts the detailed standing analysis conducted by other federal district courts in the Fifth Circuit involving challenging federal administrative rules by the Chamber of Commerce on behalf of its members. *See Chamber of Commerce of United States of Am. v. CFPB,* No. 6:22-cv-00381, 2023 WL 5835951, at *6–7 (E.D. Tex. Sept. 8, 2023) (Barker, J.); *see also Chamber of Commerce of United States v. IRS,* No. 1:16-cv-944-LY, 2017 WL 4682050, at *2 (W.D. Tex. Oct. 6, 2017) (Yeakel, J.).

7

O'Connor on March 14. Review of the docket shows the case was officially docketed with the undersigned at 3:29 p.m. (CDT) on March 14. After reviewing the pending preliminary injunction briefing—which totaled in excess of eighty pages—the Court ordered expedited briefing to address venue issues the Court identified in its review. *See* ECF No. 45. That order was docketed at 4:59 p.m. (CDT) on Monday, March 18, only two business days after the case was received.

At 4:57 p.m. (CDT) on Tuesday, March 19, Plaintiffs filed their motion for expedited consideration and noted that they would consider the request "effectively denied" if the Court did not issue a ruling by Friday, March 22. *See* ECF No. 47 at 2. Doing the math, this means the Court would have needed to rule on the preliminary injunction in just under six business days to meet Plaintiffs' demands. In the meantime, the Court had criminal sentencing dockets on both March 19 and March 21, as well as regular docket management of the 218 open cases the Court had in March. In fact, the undersigned entered in excess of 75 civil orders between March 14 and March 22.[4]

---

[4] It is also worth noting that, since October 2023, the undersigned has opened and termed 232 and 307 cases respectively. Both of these totals are the second most of the sixteen active judges in the Northern District of Texas. The only judge who opened and termed more cases during this time was fellow Fort Worth judge, Judge Reed O'Connor. On that note, compare the average times from indictment to trial (criminal) and complaint to trial (civil) in Dallas and Fort Worth. In Dallas, the average criminal case took 38 months to proceed from indictment to trial. The average in Fort Worth is 5 months. In Dallas, the average civil case took 35 months to proceed from complaint to trial. The average in Fort Worth is 16 months.

Worth reviewing as well is the recent analysis performed by Judge O'Connor of the overall number of filings in the Fort Worth Division determining that, on average, the Fort Worth Division handles 2-3 times the cases the Dallas Division. *X Corp. v. Media Matters for Am.*, No. 4:23-CV-01175-O, 2024 WL 1895255, at *7 (N.D. Tex. Apr. 26, 2024) (O'Connor, J.); *see also* ECF No. 51. Like Judge O'Connor in *X Corp.*, the Court does not recite these statistics to complain, but rather to dissuade its honorable colleagues on the Fifth Circuit that it was laggard its sworn duty to move this (or any case) along in a prompt manner.

.

To speed the case along, the Court set a preliminary injunction hearing for April 2, should it find transfer improper. *See* ECF No. 63. Presumably, the Court would have heard arguments and rendered a prompt decision on the injunctive relief sought. That would have all occurred more than a month before the Final Rule went into effect. However, as explained, the Court determined the case did not belong in Fort Worth and granted the transfer motion before the hearing took place. The Court's colleagues on the Fifth Circuit suggested the Court should have stayed the transfer while the appeal was pending. *See* ECF No. 71 at 22. The Court considered this action. But insofar as time was of the essence, the Court found transfer more appropriate. However, the Court welcomes further guidance from the Court of Appeals as to whether a district court must first rule on an injunction motion before it can transfer a case.

### C. The Court's Docket-Management Authority

This naturally segues to the Court's next concern. In their last order, the Fifth Circuit ordered this Court to make particularized findings and render a decision in ten days. *See* ECF No. 77 at 2. While the Court has the utmost deference for its colleagues on the appellate court, it respectfully notes that this seems to be a usurpation of the Court's docket-management authority, especially considering precedents in the Fifth Circuit's order. For example, *In Gen Land Off. v. Biden*, the Fifth Circuit remanded with instructions for the district court to "act expeditiously" on a preliminary injunction. *See* 71 F.4th 264, 275 (5th Cir. 2023). But here the Court of Appeals gives a specific date to enter findings, ten days to be specific. Certainly, under 28 U.S.C. § 1657(a), district courts must prioritize civil actions involving requests for injunctive relief. But under the Speedy Trial Act, incoming criminal cases have priority over civil cases. *See* 18 U.S.C.A. § 3166. If a party in a civil case can manipulate the system in order to have a district court be forced by an appellate court to act in a specific number of days, problems will arise.[5] District courts are entrusted to manage their own

---

[5] For instance, what if a trial court is in the middle of six-week criminal trial when it received an order to act in a civil case in a specific number of days? Does the trial court have to send the jury home to rule on a motion because the

9

dockets. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962) (holding that trial courts possess inherent power to "manage their own affairs so as to achieve an orderly and expeditious disposition of cases").

In this regard, the Court would appreciate additional clarity and instruction from the Fifth Circuit regarding the circumstances in which a party can instruct a trial court to rule and dictate the Court's terms and timeline. Here, Plaintiffs insisted they needed a quick ruling to implement a voluntary policy of printing updated disclosures for their customers. *See* ECF No. 48 at 6. The Court is concerned that this case opens the door for "mischief" wherein plaintiffs can come up with creative reasons for demanding prompt preliminary-injunction rulings under a dictated timeline.[6]

The Court had this case for only twenty-one days before transferring it to the District of Columbia—and that includes the time the case was before Judge O'Connor. That was over ten weeks before the Final Rule goes into effect. The case was then pending before the appellate court thirty-seven days from the time of the interlocutory appeal to the date of remand. During this five-week period, the Court is confident that the District Court for the District of Columbia could have held a preliminary-injunction hearing (if they so chose) and ruled on the merits

---

plaintiff tells them to? Would the trial court violate the criminal defendant's rights by ruling on the civil motion first?

[6]Of note, the preliminary injunction motion at issue here was only with this Court about two weeks before Plaintiffs appealed and has "sat" for just over two months at the time of this Order, significantly less time than any of the cases cited in the majority opinion. See ECF No. 81 at 7 n.12 (citing *In re Clarke*, 94 F.4th 502, 509 (5th Cir. 2024) (three months); *McCoy v. La. State Bd. of Educ.*, 332 F.2d 915, 916–17 (5th Cir. 1964) (four months); *United States v. Lynd*, 301 F.2d 818, 820 (5th Cir. 1962) (eight months).

The Court is even more perplexed as why Plaintiffs did not ask the Court for a TRO if time was truly of the essence. This is the standard practice provided for under the federal rules. *Hassani v. Napolitano*, 2009 WL 2044596 at *1 (N.D. Tex. July 15, 2009) (Fitzwater, C.J.). (A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief."). Here, Plaintiffs attest that they did not file a TRO "out of consideration for this Court's resources" and instead it appears that they made the decision to use the appellate process to command to the Court to order relief they need on the timeline when they need it. ECF No. 48 at 6.

of Plaintiffs' request.[7] The Court possessed and still possesses full faith in the District Court for the District Court of Columbia to make a just and fair ruling on Plaintiffs' motion. If parties cannot have faith that the legal system operates with integrity and full credence in the law, then the system is already broken. We must trust the system.

\* \* \*

In conclusion, the Court rejects the notion that it did not act "promptly" with respect to the Plaintiffs' preliminary-injunction motion. On the contrary—and as the record plainly shows—the undersigned received the case on March 14 (ECF No. 39), Plaintiffs moved for expedited consideration on March 19 (ECF No. 47), Plaintiffs filed an interlocutory appeal on March 25 (ECF No. 57), and the Court transferred the case to the D.D.C on March 28 (ECF No. 67). That all happened in two weeks. *See generally* ECF No. 81 at 25 (noting a requirement that trial courts rule on a motion "*in less than two weeks* from assignment of [a] case" would be "an impossible law for [the Circuit] to impose"). In any event, as explained, a district court has broad discretion and inherent authority to manage its docket. *See Link*, 370 U.S. at 630–31. That's what it did here, much to the apparent dismay of the Fifth Circuit.

---

[7] In his concurrence, Judge Oldham suggested that this Court "appeared to analyze the motion to transfer with an eye towards discouraging forum and / or judge-shopping" and that the Court should not consider forum shopping because the Fifth Circuit and Supreme Court has not enumerated that as a transfer consideration. ECF No. 81 at 22–23. This Court whole-heartedly agrees with the Judge's learned observation. Forum-shopping was immaterial for the Court's substantive transfer analysis in this case. In fact, the undersigned has transferred over a dozen cases since 2019, with no mention that the transfer analysis was motivated by venue-shopping concerns. *See, e.g., Inst. for Free Speech v. Johnson,* No. 4:23-cv-0808-P, 2023 WL 7420281 (N.D. Tex. Nov. 8, 2023) (Pittman, J.); *First Call Int'l, Inc. v. S&B Glob., Inc.*, No. 4:23-cv-00199-P, 2023 WL 7389007 (N.D. Tex. Nov. 8, 2023) (Pittman, J.); *BNSF Ry. Co. v. Float Alaska IP, LLC*, No. 4:22-cv-0950-P, 2023 WL 3591683 (N.D. Tex. May 22, 2023) (Pittman, J*.); Career Colls. & Sch. of Tex. v. United States Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) (Pittman, J.). This time was no different. And if adequate jurisdiction was found in this Court, it would still transfer this case for the reasons articulated in its original transfer order. *See* ECF No. 67.

11

## CONCLUSION

General George S. Patton, Jr. famously said "Never tell people *how* to do things. Tell them *what* to do and they will surprise you with their ingenuity." General George S. Patton Jr., *War as I Knew It* 275 (1947). The Court accepts the rulings of Fifth Circuit in this case without passion or prejudice and will apply its guidance to the utmost of its ability. However, this Court would be remiss it did not point out the potential landmines the court's ruling could pose for a trial judge's day-to-day docket-management discretion, especially in a busy division. Parties should not be allowed to manipulate the court system to order trial judges "how", "what", and "when" to rule.

For the above reasons, the Court **GRANTS** Plaintiffs' preliminary injunction motion (ECF No. 3) and **STAYS** the CFPB's amendment to Regulation Z, 12 C.F.R. § 1206 ("Final Rule").

**SO ORDERED** on this **10th day of May 2024.**

_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE