# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; FORT WORTH CHAMBER OF COMMERCE; LONGVIEW CHAMBER OF COMMERCE; AMERICAN BANKERS ASSOCIATION; CONSUMER BANKERS ASSOCIATION; and TEXAS ASSOCIATION OF BUSINESS, | |
| Plaintiffs, | |
| v. | Case No.: 4:24-cv-213-P |
| CONSUMER FINANCIAL PROTECTION BUREAU; and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau, | |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANTS' RENEWED
MOTION TO TRANSFER UNDER 28 U.S.C. § 1404 AND
MOTION TO DISMISS OR TRANSFER UNDER 28 U.S.C. § 1406**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

Introduction .................................................................................................................... 1

Background ..................................................................................................................... 2

Argument ........................................................................................................................ 6

    I.     The Court should again transfer this case under 28 U.S.C. § 1404. ............................. 6

         A.    Several public interest factors favor transfer. ......................................... 7

            1.    Court Congestion .................................................................. 7

            2.    Local Interests ...................................................................... 8

            3.    Familiarity with Governing Law ......................................... 10

         B.    One private interest factor also favors transfer. .................................... 11

         C.    Taken together, these factors clearly favor transfer to D.D.C., as this Court has already appropriately found. ................................................ 13

    II.    In the alternative, the Court should dismiss or transfer this case because venue is improper. ............................................................................................................. 14

         A.    The Fort Worth Chamber lacks standing, so its residence cannot be Plaintiffs' hook for venue in this District. .................................. 15

         B.    Plaintiffs' alternative bid for transactional venue fares no better. ........ 20

Conclusion .................................................................................................................... 21

i

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*ACQIS LLC v. EMC Corp.*,
   67 F. Supp. 3d 769 (E.D. Tex. 2014) ...................................................................... 10

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*,
   627 F.3d 547 (5th Cir. 2010) ................................................................................... 17

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
   240 F. App'x 612 (5th Cir. 2007) ............................................................................ 14

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
   2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) .................................................. 14, 20

*CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*,
   2024 WL 2193873 (U.S. May 16, 2024) ............................................................... 3, 5

*Chamber of Com. v. CFPB*,
   2023 WL 5835951 (E.D. Tex. Sept. 8, 2023) ......................................................... 17

*Chamber of Com. v. IRS*,
   2017 WL 4682050 (W.D. Tex. Oct. 6, 2017) ..................................................... 17, 18

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................................................... 19

*Clark & Reid Co. v. United States*,
   804 F.2d 3 (1st Cir. 1986) ....................................................................................... 15

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
   51 F.4th 616 (5th Cir. 2022) ..................................................................................... 3

*Doe v. Spahn*,
   2021 WL 6052088 (N.D. Cal. Dec. 21, 2021) ......................................................... 8

*Greater Yellowstone Coal. v. Bosworth*,
   180 F. Supp. 2d 124 (D.D.C. 2001) ........................................................................ 13

*Holovchak v. Cuccinelli*,
   2020 WL 4530665 (E.D. Pa. Aug. 6, 2020) ............................................................. 8

*Humane Soc'y of the U.S. v. Hodel*,
   840 F.2d 45 (D.C. Cir. 1988) .................................................................................. 18

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) ............................................................................ 8, 9, 10

*In re Fort Worth Chamber of Com.*,
2024 WL 1976963 (5th Cir. May 3, 2024) ........................................................ *passim*

*In re Horseshoe Ent.*,
337 F.3d 429 (5th Cir. 2003) ........................................................ 12

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ........................................................ 13

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ........................................................ 11

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ........................................................ 1, 7, 12, 13

*Inst. of Certified Pracs., Inc. v. Bentsen*,
874 F. Supp. 1370 (N.D. Ga. 1994) ........................................................ 15

*JTH Tax, LLC v. Cortorreal*,
2023 WL 4673278 (N.D. Tex. July 20, 2023) ........................................................ 6, 16

*Law v. Sessions*,
2017 WL 2405331 (S.D. Tex. June 2, 2017) ........................................................ 13

*Munro v. U.S. Copyright Off.*,
2022 WL 3566456 (W.D. Tex. May 24, 2022) ........................................................ 20

*Sierra Club v. Angelle*,
2019 WL 9899513 (N.D. Cal. Nov. 26, 2019) ........................................................ 13

*Stewart v. Azar*,
308 F. Supp. 3d 239 (D.D.C. 2018) ........................................................ 8, 11

*Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*,
677 F.3d 720 (5th Cir. 2012) ........................................................ 15

*Students for Fair Admis., Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023) ........................................................ 17, 19

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........................................................ 19

*TransFirst Grp., Inc. v. Magliarditi*,
237 F. Supp. 3d 444 (N.D. Tex. 2017) ........................................................ 13

*Woodke v. Dahm*,
70 F.3d 983 (8th Cir. 1995) ........................................................ 17

**Statutes**

15 U.S.C. § 1665d(a) ............................................................................................ 2

28 U.S.C. § 1391(e) ............................................................................................ 17

28 U.S.C. § 1391(e)(1)..................................................................................... 15, 20

28 U.S.C. § 1404.......................................................................................... *passim*

28 U.S.C. § 1406.......................................................................................... *passim*

**Regulations**

*Credit Card Penalty Fees (Regulation Z)*, Final Rule,
  89 Fed. Reg. 19128 (Mar. 15, 2024)....................................................................... 2

**Other Authorities**

18B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and
  Procedure § 4478.1 (3d ed. 2019) ...................................................................... 16

U.S. Census, *U.S. Population Trends Return to Pre-Pandemic Norms as More States Gain
  Population* (Dec. 19, 2023)............................................................................. 10

## INTRODUCTION

From the outset of this case, this Court has expressed significant "concerns regarding whether the Fort Worth Division of the Northern District of Texas is the correct venue to hear this lawsuit." *See* Order (Mar. 18, 2024), ECF No. 45. After briefing on an expedited basis in the weeks after the filing of this lawsuit, the Court concluded, two months ago, that "[t]his case does not belong in the Northern District of Texas and certainly not in the Fort Worth Division." Op. & Order 7 (Mar. 28, 2024), ECF No. 67. In the weeks since, however, procedural hurdles—including Plaintiffs' emergency appeal to the Fifth Circuit on their preliminary injunction motion—have prevented the Court from transferring this case to the U.S. District Court for the District of Columbia. Now that jurisdiction over the case has returned to this Court, Defendants the Consumer Financial Protection Bureau and Rohit Chopra, in his official capacity as the Bureau's director, (collectively, the Bureau) file this motion asking the Court to again transfer this case for the convenience of parties and in the interests of justice under 28 U.S.C. § 1404(a), or in the alternative to dismiss or transfer this case for improper venue under 28 U.S.C. § 1406.

The Bureau first renews its motion to transfer to D.D.C. under 28 U.S.C. § 1404(a), which allows transfer for the convenience of parties and in the interest of justice. To determine whether transfer is appropriate, the Court weighs eight factors laid out in the Fifth Circuit's decision in *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). As this Court has already determined, several of the *Volkswagen* factors clearly favor transfer, and none support keeping this case in a district and division with no particular tie to the relevant challenged rulemaking. Nothing in this analysis has changed since the Court made that determination in March, and the Court has previously indicated that it would transfer the case once jurisdiction was returned. *See* Op. & Order 11 n.7 (May 10, 2024), ECF No. 82.

1

In the alternative, the Court should dismiss or transfer this case under § 1406 because venue is improper. The complaint's primary hook in this venue is the presence of the Fort Worth Chamber of Commerce as a Plaintiff. But not one of the entities actually subject to the Rule Plaintiffs challenge—which concerns only the late fees charged by 30 to 35 of the largest credit card issuers in the country—is based in Fort Worth. The Fort Worth Chamber, whose stated mission is to improve the business climate in Fort Worth, therefore does not have associational standing to sue on behalf of out-of-state card issuers whose interests are not germane to the Fort Worth Chamber's localized mission. Although the Court previously determined that the Fort Worth Chamber has standing to sue, the Bureau respectfully requests that it reconsider that determination if it reaches the Bureau's alternative request for dismissal or transfer under § 1406.

## BACKGROUND

Plaintiffs challenge a Bureau regulation under a provision of the Credit Card Accountability and Disclosure Act (the CARD Act) requiring that the fees credit card issuers impose on consumers who fail to pay on time must be "reasonable and proportional" to the violation. *See* 15 U.S.C. § 1665d(a). Exercising authority granted to it under the CARD Act, the Bureau issued a final rule on credit card late fees in early March. *See Credit Card Penalty Fees (Regulation Z)*, 89 Fed. Reg. 19128 (Mar. 15, 2024). Most significantly, the new Late Fee Rule repeals the existing safe harbor for a fee amount presumed to be "reasonable and proportional" to the late payment and adopts a new, lower safe harbor. *Id.* at 19155. Those changes apply only to approximately 30 to 35 of the largest credit card issuers in the country. *Id.* at 19144, 19155. The Late Fee Rule was originally set to take effect on May 14, 2024. *Id.* at 19188.

Two days after the Bureau published the Rule on its website, Plaintiffs sued to challenge the regulation. Plaintiffs are six business associations of varying sizes and scopes. Only one—the Fort Worth Chamber of Commerce—is located in the Fort Worth Division or the Northern District

2

more generally, where Plaintiffs chose to sue. *See* PI App'x 22 (Mar. 7, 2024), ECF No. 5 (Montgomery Decl. ¶ 5). In their complaint, Plaintiffs raised a constitutional challenge to the Rule based on the Fifth Circuit's holding in *Community Financial Services Ass'n of America, Ltd. v. CFPB* (*CFSA*), 51 F.4th 616, 638 (5th Cir. 2022)—which the Supreme Court has since reversed, *see CFPB v. CFSA*, No. 22-448, 2024 WL 2193873 (U.S. May 16, 2024). Plaintiffs also raised four claims under the Administrative Procedure Act (APA).

Plaintiffs immediately moved for a preliminary injunction. *See* PI Mot. (Mar. 7, 2024), ECF No. 3. As directed by the Court, the Bureau opposed three business days later. *See* Order (Mar. 8, 2024), ECF No. 15; Opp'n Br. (Mar. 12, 2024), ECF No. 23 ("PI Opp'n"). Among other arguments, the Bureau contended that Plaintiffs were unlikely to succeed on the merits because venue in the Northern District of Texas is improper and the case should be transferred or dismissed under 28 U.S.C. § 1406. *See* PI Opp'n 9–12. As the Bureau noted, not one of the 30 to 35 card issuers subject to the final rule is based in this District. *Id.* at 12. Two business days after briefing on the preliminary injunction motion concluded, the Court requested expedited supplemental briefing on whether the case should be transferred under 28 U.S.C. § 1404(a). *See* Order (Mar. 18, 2024), ECF No. 45. In that order, the Court noted "that there appears to be an attenuated nexus to the Fort Worth Division," and expressed "concerns" over whether it was "the correct venue to hear this lawsuit." *Id.* at 1. At the Court's invitation, the Bureau moved to transfer under 28 U.S.C. § 1404(a) on Thursday, March 21. *See* Transfer Mot. (Mar. 21, 2024), ECF No. 52.

On Monday, March 25, minutes after opposing the Bureau's transfer motion, Plaintiffs noticed an interlocutory appeal, arguing that this Court had "effectively denied" their preliminary injunction motion by requesting supplemental briefing on venue and failing to rule by the date Plaintiffs had requested. *See* Mot. for Inj. Pending Appeal at 4, *Chamber of Com. v. CFPB*, No.

3

24-10248 (Mar. 25, 2024), ECF No. 7. Shortly after Plaintiffs filed that appeal, this Court transferred the case to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1404(a). *See* Op. & Order 7 (Mar. 28, 2024), ECF No. 67 ("Transfer Op."). The court noted, among other considerations, that this case "chiefly involves out-of-state Plaintiffs challenging the actions of government officials taken in the District of Columbia." *Id.* at 5. In fact, "as far as" the Court could "discern, not one of the banks or credit card companies directly affected by the future Rule is located in the Fort Worth Division." *Id.* at 6–7. The Court transmitted the case to D.D.C. that same day, *see* ECF Entry of Mar. 28, 2024, determining that immediate transfer was appropriate given Plaintiffs' repeated insistence that "time was of the essence," Op. & Order 9 (May 10, 2024), ECF No. 82 ("PI Op.").

Plaintiffs successfully sought an administrative stay of the transfer in the Fifth Circuit and petitioned for a writ of mandamus asking the Fifth Circuit to reverse it. *See* Unpublished Order, *Chamber of Com. v. CFPB*, No. 24-10248 (Mar. 29, 2024), ECF No. 62-1; Mandamus Pet., *In re Chamber of Com.*, No. 24-10266 (Mar. 29, 2024), ECF No. 5. A panel of the Fifth Circuit granted that petition, determining that Plaintiffs' appeal of the effective denial of their preliminary injunction motion had divested this Court of jurisdiction to transfer the case. *In re Fort Worth Chamber of Com.*, 98 F.4th 265 (5th Cir. 2024), *withdrawn and superseded by* No. 24-10266, 2024 WL 1976963 (5th Cir. May 3, 2024). The panel majority did not reach "the correctness of [this Court's] transfer order," 2024 WL 1976963 at *1, although Judge Oldham, in concurrence, noted that he would have reversed the transfer, *id.* at *7, and Judge Higginson, in dissent, explained that this Court's "well-reasoned and fact-based transfer order" was "soundly within [its] discretion," *id.* at *12, *14.

Turning to Plaintiffs' preliminary injunction appeal, on April 30, the Fifth Circuit vacated the "effective denial" and entered a "limited remand" with instructions to this Court to rule on the preliminary injunction motion by May 10. *See* Unpublished Order, *Chamber of Com. v. CFPB*, No. 24-10248 (5th Cir. Apr. 30, 2024), ECF No. 105-1. In its remand order, the Fifth Circuit stated that it retained jurisdiction over the appeal. *Id.* at 2.

On May 10, this Court granted Plaintiffs' preliminary injunction motion and stayed the Bureau's Late Fee Rule. *See* PI Op. 12. In its analysis of Plaintiffs' likelihood of success on the merits, the Court held only that Plaintiffs were likely to succeed on their constitutional challenge to the Bureau's statutory funding mechanism under the Fifth Circuit's then-in-force precedent in *CFSA*. *See id.* at 5–6. The Court did not reach any of the statutory challenges Plaintiffs raised in their preliminary injunction motion. In a discussion of its docket management decisions, the Court also noted that, "if adequate jurisdiction was found in this Court, it would still transfer this case for the reasons articulated in its original transfer order." *Id.* at 11 n.7.

Following the entry of the preliminary injunction, the Bureau moved the Fifth Circuit to dismiss the appeal as moot. *See* Mot. Dismiss, *Chamber of Com. v. CFPB*, No. 24-10248 (May 15, 2024), ECF No. 116. As the Bureau explained, this Court's injunction gave Plaintiffs the relief they sought, and the empty vessel of the appeal risked constraining this Court's ability to manage the case going forward. *Id.* at 3–4. The Fifth Circuit granted the motion to dismiss. *See* Unpublished Order, *Chamber of Com. v. CFPB*, No. 24-10248 (May 17, 2024), ECF No. 122-1. The court of appeals issued the mandate on May 24, formally returning the case to this Court. *See* Mandate, *Chamber of Com. v. CFPB*, No. 24-10248 (May 24, 2024), ECF No. 134-1.

On May 16, the Supreme Court issued its decision in *CFPB v. CFSA*, No. 22-448, 2024 WL 2193873 (U.S. May 16, 2024). In that opinion, the Supreme Court—with Justice Thomas

5

writing for a seven-justice majority—rejected the same attack on the Bureau's statutory method of funding that Plaintiffs raised here and upheld the validity of the Bureau's funding. As the Bureau has explained in previous filings in this Court and the Fifth Circuit, the decision in *CFSA* undermines the basis for the Court's preliminary injunction order. *See* Notice (May 17, 2024), ECF No. 90; Letter Pursuant to Rule 28(j), *Chamber of Com. v. CFPB*, No. 24-10248 (May 17, 2024), ECF No. 119. The Bureau anticipates that it will seek to vacate the preliminary injunction at the appropriate time, and that the parties will then litigate whether the preliminary injunction should be vacated or remain in place based on the other grounds for relief Plaintiffs raised in their original motion.

Before then, however, the Bureau respectfully submits that the Court should return to the threshold issue raised from the outset of this litigation: Whether the case should continue in this Court at all. *See JTH Tax, LLC v. Cortorreal*, No. 4:23-cv-0173-P, 2023 WL 4673278, at *2 (N.D. Tex. July 20, 2023) (evaluating threshold § 1404 transfer motion before reaching merits). Accordingly, to satisfy its obligation to respond to the complaint and tee up those crucial threshold venue arguments, the Bureau submits this motion to transfer or dismiss.

## ARGUMENT

### I.   The Court should again transfer this case under 28 U.S.C. § 1404.

The Bureau first requests that the Court reaffirm its prior order, ECF No. 67, and transfer this case to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1404. Section 1404 allows transfer "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."[1] 28 U.S.C. § 1404(a). To

---

[1] This Court has already determined that the case could have been brought in D.D.C., *see* Transfer Op. 3, and Plaintiffs have never disputed that conclusion.

determine whether transfer is convenient and in the interest of justice, courts in this Circuit consider eight factors—four public, four private. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*).[2]

As this Court has already determined, several of those public and private interest factors weigh in favor of transfer, and they collectively establish that it would clearly be more convenient and in the interest of justice to adjudicate this case in D.D.C. Accordingly, the Bureau respectfully requests that the Court transfer this case "for the reasons articulated in its original transfer order," *see* PI Op. 11 n.7, and as set out below.

**A.  Several public interest factors favor transfer.**

In its original transfer decision, the Court concluded that the public interest factors "move[d] the needle most toward transfer." Transfer Op. 7. That remains the case.

**1.  *Court Congestion***

First, as this Court has already appropriately found, the administrative difficulties flowing from court congestion favor transfer because this division is "significantly busier" than D.D.C. Transfer Op. 4–5. "In 2023, each Judge in the Northern District of Texas saw an average of 287 more filings than each Judge in the D.D.C." *Id.* at 4. This varying case load has resulted in substantially faster resolution of cases in D.D.C. than in this District: "The median time for disposition of a case in the D.D.C. is 5.1 months; it's 6.5 months in the Northern District of Texas."

---

[2] The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*

*Id.* at 5 (citing U.S. DIST. CTS., *Median Time From Filing to Disposition of Civil Cases, by Action Taken*). The Court should reaffirm that the court congestion factor strongly favors transfer.[3]

### 2. *Local Interests*

Second, the local interest factor supports transfer to D.D.C. because, as this Court has already determined, "there is a strong interest in having this dispute resolved in the District of Columbia" and no countervailing interest in deciding this case in the Northern District of Texas. Transfer Op. 5. The Court's inquiry here focuses on "the interest of non-party citizens in adjudicating the case," with "[c]onsiderations such as the 'location of the injury, witnesses, and the [p]laintiff's residence,'" serving as "useful proxies." *In re Clarke*, 94 F.4th at 511. The Court has already correctly determined that the District of Columbia has an interest in deciding this case because "the Rule at issue . . . was promulgated in Washington D.C., by government agencies stationed in Washington D.C., and by employees who work in Washington D.C." Transfer Op. 6. D.D.C. is the "epicenter for these types of rules and challenges thereto," *id.* (citing *Stewart v. Azar*, 308 F. Supp. 3d 239, 289 (D.D.C. 2018)), so it is unsurprising that that jurisdiction would have an interest in deciding this dispute. *See also Holovchak v. Cuccinelli*, No. 20-cv-210-KSM, 2020 WL 4530665, at *5 (E.D. Pa. Aug. 6, 2020) (finding that "[t]he District of Columbia's interest in adjudicating the case is stronger, since the agency and its officials are located in the District"); *Doe v. Spahn*, No. 21-cv-04007-LB, 2021 WL 6052088, at *7 (N.D. Cal. Dec. 21, 2021) (in

---

[3] In the mandamus action in the Fifth Circuit, Plaintiffs contended that the Court's previous reliance on this factor ran afoul of the Fifth Circuit's guidance in *In re Clarke*, 94 F.4th 502 (5th Cir. 2024). But as the Bureau explained in its opposition in that proceeding, *Clarke* did not somehow read the court congestion factor out of the § 1404 test. Rather, *Clarke* made clear only that "transfer cannot be granted *solely* because of court congestion," *id.* at 515—something the Bureau has not asked for and the Court never purported to do. Indeed, even Judge Oldham noted in his concurrence that congestion could favor transfer here. *See In re Fort Worth Chamber of Com.*, 2024 WL 1976963 at *10 (Oldham, J., concurring) (acknowledging that this factor might "slightly" "weigh[] in favor of transfer").

challenge to nationwide Peace Corps policy, finding that Washington, D.C., had stronger local interest "[b]ecause [] the allegedly discriminatory" agency "decision-making" occurred there).

To be clear, and contrary to Plaintiffs' "hyperbolic concerns," Transfer Op. 6, this analysis does not suggest that the local interest factor will always favor transfer to D.D.C. in any challenge to nationwide rulemaking. After all, "the transfer factors are relative." *In re Clarke*, 94 F.4th at 510. In other cases, challengers may choose to file suit in districts outside of D.C. where citizens have some real and particular stake in the policy at issue—either because regulated parties are based there, or because some other direct effect of the challenged policy will be felt in that venue. Those local interests could outweigh any D.C.-based interest in adjudicating a regulation with nationwide effect. And this Court has already held that "[a]n easy way for Plaintiffs to" avoid transfer remains: If they file suit "in jurisdictions where the impact is uniquely and particularly felt." Transfer Op. 6.

But in this case, there are no particularized local interests on the Northern District of Texas's side of the ledger. That's because none of the entities actually subject to the new Rule— 30 to 35 of the largest card issuers in the country—is based in this District or Division. Transfer Op. 6–7 ("[A]s far as this Court can discern, not one of the banks or credit card companies directly affected by the future Rule is located in the Fort Worth Division."). While those non-party citizens have an interest in this rulemaking, none are based in the Fort Worth Division or could support an interest in adjudicating the case in this Court.

Plaintiffs have urged otherwise, pointing out that large card issuers affected by the Rule have customers that live in the Northern District of Texas. Plaintiffs offer no support for their claim that large card issuers will "feel the effects of the CFPB's rule in the district" just because they have customers in Fort Worth. Mandamus Pet. 19, *In re Chamber of Com.*, No. 24-10266 (Mar.

9

29, 2024), ECF No. 5. Moreover, there is no good reason to attribute the effects of the Rule on large card issuers to the place where their customers incur the fees—rather than, as common sense would suggest, the place where banks ultimately receive those payments. Besides, customers of card issuers live in D.C., too, so neither the interests of large card issuers in charging fees to those customers, nor the interest of the customers themselves in the challenged rulemaking, can factor into the analysis.[4] The Fifth Circuit's precedent is clear that "an interest that could apply to virtually any judicial district or division in the United States [] cannot affect the local-interest determination" because such an interest "is the same in both the transferor and transferee venue." *In re Clarke*, 94 F.4th at 510; *cf. also ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 778–79 (E.D. Tex. 2014) ("[W]hen products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue").

### 3.  *Familiarity with Governing Law*

Last, the Bureau submits that a third public interest factor—familiarity with governing law—could support the Court's transfer decision. In its prior transfer opinion, the Court found this factor to be neutral because the Northern District of Texas is equally able to adjudicate APA matters as D.D.C. Transfer Op. 6. To be clear, there is no question that the Northern District of

---

[4] Nor is there any basis, as Judge Oldham suggested in concurrence, to find "relative[ly]" more interest in this District than in D.C. because "more potentially affected non-party" customers live in Texas. *See In re Fort Worth Chamber*, 2024 WL1976963, at *10 (Oldham, J., concurring). On this point, Plaintiffs claim only that the two declarant banks have about 10 percent of their receivables from the state of Texas. *See* Transfer Opp'n at 13, ECF No. 55. But Texas also has close to 10 percent of the U.S. population, so it's unsurprising that it also represents a similar proportion of those banks' income stream. *See* U.S. Census, *U.S. Population Trends Return to Pre-Pandemic Norms as More States Gain Population* (Dec. 19, 2023), https://www.census.gov/newsroom/press-releases/2023/population-trends-return-to-pre-pandemic-norms.html. That shouldn't affect the local interests analysis, as Texas cannot have a greater interest just because more people live there.

Texas is fully capable of adjudicating the claims here. But this factor looks to the relative experience different courts have with the type of claims at issue, not their competence. *See, e.g.*, *Stewart v. Azar*, 308 F. Supp. 3d 239, 248 (D.D.C. 2018) (finding D.D.C.'s "experience with APA cases" weighed against transfer). And the D.D.C. has more experience with APA cases like this one given that it is "the epicenter for these types of rules and challenges thereto," Transfer Op. 6. Given that this Court is equally capable of adjudicating this case, this factor may not strongly tip the scales, but it at least weighs slightly in favor of transfer.

### B. One private interest factor also favors transfer.

This Court already determined that one of the private interest factors—"all other practical factors that might make a trial more expeditious and inexpensive"—favors transfer. Transfer Op. 3–4. In particular, the Court recognized that D.D.C. was "more practical" given that a substantial majority of the lawyers (eight of the ten listed on the parties' preliminary injunction filings) are based there. Given the travel required, the Court determined that hearings would be more "expensive" in Fort Worth. That is undeniably true and undoubtably would make proceedings in D.C. more expeditious and inexpensive. The Court should reaffirm that conclusion.

Plaintiffs argued otherwise in the mandamus proceeding, and Judge Oldham, in his concurrence, agreed with them that this factor did not favor transfer. But those arguments are unpersuasive.

To start, Plaintiffs are wrong to contend that Fifth Circuit case law forecloses the Court's analysis. *Contra* Mandamus Pet. 20–21, *In re Chamber of Com.*, No. 24-10266 (Mar. 29, 2024), ECF No. 5. In the cases Plaintiffs cited, district courts had considered "location of counsel" as a relevant factor in and of itself—and that's what the Fifth Circuit disapproved. *See In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("Volkswagen I"); Order on Transfer, *Scott v. Volkswagen AG*, No. 2:03-cv-218 (E.D. Tex. Feb. 18, 2004) (listing "location of counsel" as one of seven

private interest factors); *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003) (quoting district court decision listing "location of counsel" as freestanding factor). The Court here got it right when it linked the location of counsel to something that *should* be considered: "practical factors that might make a trial more expeditious and inexpensive." Transfer Op. 3 (citing *Volkswagen II*, 545 F.3d at 315).

Nor did the Court err in recognizing in its prior transfer order that the location of counsel would make proceeding in D.C. more inexpensive. This did not unfairly count Plaintiffs' choice of counsel against them. *Contra* Mandamus Pet. 21; *In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *9 (Oldham, J., concurring). The location of Plaintiffs' counsel, just like the location of any other people involved in the case, affects where litigation is more convenient and therefore appropriately factors into the transfer analysis. Besides, even if the convenience of Plaintiffs' counsel (most of whom are based in D.C.) didn't count *against* Plaintiffs' chosen venue, it certainly couldn't count *in favor of* keeping the case in Texas.

And the convenience of Defendants' counsel (all of whom are based in D.C.) counts against keeping the case in the Northern District and in favor of transfer to D.C., where most of Plaintiffs' attorneys are also based. There is simply no way to validly dispute that proceedings will be far more convenient and inexpensive in the venue where the large majority of the involved attorneys are based. In his concurrence, Judge Oldham objected that considering the location of agency counsel would improperly "concentrate federal judicial power in D.C." because "federal defendants could always argue" for transfer there. *See In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *9. But this is only one factor in a multi-prong balancing test, and the fact that lawyers for the government are (often, though certainly not always) based in D.C. is not dispositive—and would not likely tip the scales where plaintiffs choose a venue with a real

12

connection to the challenged Rule. The Bureau, like other components of the federal government, regularly litigates—as both plaintiff and defendant—in courts across the country, when those venues have meaningful connections to the case at hand.

### C. Taken together, these factors clearly favor transfer to D.D.C., as this Court has already appropriately found.

The Court must next weigh these factors, without giving "dispositive weight" to any one factor or engaging in some "raw counting" exercise. *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023). In this analysis, the Court must give the "*appropriate* deference" to "the plaintiff's choice of venue." *Volkswagen II*, 545 F.3d at 315 (emphasis added). But as this Court has recognized, the appropriate level of deference is lowered, and the plaintiff's choice "carries less weight" in cases, like this one, where "the plaintiff's chosen forum has little or no factual connection to the case." *Law v. Sessions*, No. 4:16-cv-2799, 2017 WL 2405331, at *2 (S.D. Tex. June 2, 2017); *see also* Transfer Op. 2 ("The weight accorded the Plaintiffs' choice of venue 'is diminished where the plaintiff brings suit outside his home forum.'").

In his concurring opinion on mandamus, Judge Oldham expressed concern that this analysis improperly reduced the burden on the Bureau and lacked support in Fifth Circuit or Supreme Court precedent. *See In re Fort Worth Chamber of Com.*, 2024 WL 1976963, at *8. This principle, however, is a well-established part of transfer analysis in courts in this and other circuits. *See, e.g.*, *TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 459 (N.D. Tex. 2017) ("[W]hen a plaintiff is not a resident of the chosen forum, or when the operative facts underlying the case did not occur in the chosen forum, a court gives less deference to a plaintiff's choice."); *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) ("[T]his deference is mitigated if the plaintiffs' choice of forum has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'"); *Sierra Club v. Angelle*, No. 19-cv-03263-RS,

2019 WL 9899513, at *3 (N.D. Cal. Nov. 26, 2019) (noting that deference may be reduced even where plaintiff resides in the venue, if there is otherwise no connection to the events of the case). And it makes good sense. The § 1404 analysis asks whether transfer would be convenient for the parties; where a party chooses to sue in a venue with little to no connection to the case, it is unsurprising that a court might find that choice less convenient.

Based on the foregoing analysis, the Bureau here has overcome whatever deference is owed Plaintiffs' choice to sue in a venue with no real connection to the dispute and established that transfer is clearly warranted for the convenience of parties and in the interests of justice. As outlined above, four *Volkswagen* factors favor transfer, and none counsel in favor of this case remaining in the Fort Worth Division rather than D.C. This Court has already once determined that "[t]his case does not belong in the Northern District of Texas and certainly not in the Fort Worth Division." Transfer Op. 7. It should reaffirm that conclusion now.

## II.    In the alternative, the Court should dismiss or transfer this case because venue is improper.

In the alternative, the Court should dismiss this case or transfer to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1406 because Plaintiffs have not established that venue is proper in the Fort Worth Division of the Northern District of Texas in the first place. "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam). But "after venue is raised by a defendant, the plaintiff has the burden to prove that venue is proper." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 4:23-cv-0206-P, 2023 WL 2975164, at *1 (N.D. Tex. Apr. 17, 2023). Put simply, Plaintiffs have not carried their burden here.

14

In suits against the Federal government, venue is proper where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). At various stages of this litigation, Plaintiffs have claimed that venue is proper under prongs (B) and (C). They have not established that either prong is satisfied.

### A. The Fort Worth Chamber lacks standing, so its residence cannot be Plaintiffs' hook for venue in this District.

Plaintiffs first argue that venue is proper under § 1391(e)(1)(C) because a named Plaintiff—the Fort Worth Chamber—is based here. But the Fort Worth Chamber cannot serve as Plaintiffs' anchor in this venue because the party that creates venue "must have standing," *Clark & Reid Co. v. United States*, 804 F.2d 3, 5 (1st Cir. 1986), and the Fort Worth Chamber doesn't. *See also Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) (noting that Plaintiffs cannot "manufacture venue by adding . . . a party" that "lacks standing to bring th[e] action").

At the outset, the Bureau recognizes that, in its preliminary injunction order, the Court appeared to reject this argument, concluding in a footnote that the Fort Worth Chamber of Commerce "does qualify for associational standing." PI Op. 7 n.3. But the Court is free to reconsider and reverse conclusions made in "interlocutory orders for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the new law." *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727–28 (5th Cir. 2012). In reconsidering such conclusions, the Court should "strike a balance between stability and reaching the right decision." *Id.* at 727 n.3 (cleaned up).

15

Here, the balance between stability and reaching the right decision weighs in favor of the Court reconsidering and reversing its conclusion. With regard to stability, the case is still in its early stages, and the decision on the Fort Worth Chamber's standing, and thus its ability to support venue in Fort Worth, has not served as the foundation on which years' worth of litigation has been built. *See* 18B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4478.1 (3d ed. 2019) ("Courts have recognized the general proposition that the decision whether to reconsider an earlier ruling is properly affected by the stage the proceeding has reached. Stability becomes increasingly important as the proceeding nears final disposition."). On the other side of the balance, reaching the right decision is important. Whether venue is proper is a threshold issue that should be resolved before the Court exercises its judicial power, as this Court recognized in *JTH Tax, LLC v. Cortorreal*, No. 4:23-cv-0173-P, 2023 WL 4673278, at *2 (N.D. Tex. July 20, 2023) (explaining that venue is among the threshold "issues a court must address prior to proceeding on the merits").

In addition, the unusual time constraints that accompanied the Court's decision on the Fort Worth Chamber's standing weigh in favor of the Court revisiting its conclusion regarding the Fort Worth Chamber's standing in less hurried circumstances. Order at 2, *Chamber of Com. v. CFPB*, 24-10248 (5th Cir. Apr. 30, 2024), ECF No. 105-1 (affording the Court 10 days to decide Plaintiffs' preliminary injunction motion); Wright & Miller, Federal Practice and Procedure § 4478.1 (explaining that it makes sense for courts to have the authority to revisit interlocutory decisions because "too many things can go wrong, particularly with rulings . . . made under the pressures of time and docket"). Thus, the Court should reconsider its conclusion that the Fort Worth Chamber has standing and, for the reasons explained below, hold that it doesn't—and that venue is improper.

Turning to the merits of that standing inquiry, the Fort Worth Chamber cannot satisfy a key element of the well-established test for associational standing: that the "interests" the association "seeks to protect" with the lawsuit "are germane to the organization's purpose." *Students for Fair Admis., Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). Admittedly, the germaneness test only requires that the litigation be "pertinent" to the organization's interests. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010). But in trying to use a local association with no real interest in the controversy as a venue vehicle for far-flung members, Plaintiffs fail even this test.[5]

In its preliminary injunction order, the Court appeared to reject this argument. PI Op. 7 n.3. But in holding that the Fort Worth Chamber has associational standing, the Court relied entirely on the standing analysis in two other cases that did not involve any dispute about whether the suit was germane to the plaintiff organizations' interests. *See id.* ("adopt[ing]" the standing analysis "conducted by other federal district courts in the Fifth Circuit involving challenging federal administrative rules by the Chamber of Commerce on behalf of its members"). The first case evaluated only whether plaintiffs had properly identified a member that would be harmed by the challenged action. *See Chamber of Com. v. CFPB*, No. 6:22-cv-00381, 2023 WL 5835951, at *5–7 (E.D. Tex. Sept. 8, 2023). The second determined only that an association's identified member would have standing to sue in its own right. *See Chamber of Com. v. IRS*, No. 1:16-cv-944-LY,

---

[5] When assessing venue, it's important to remember that the statutory venue limitations are designed to protect defendants' equities. *See Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("One of the central purposes of statutory venue is to ensure that a defendant is not haled into a remote district having no real relationship to the dispute."). And while Congress made the venue provisions more pro-plaintiff with respect to suits against the Federal government (by allowing suits in the district of a plaintiff's residence, if no real property is at issue, 28 U.S.C. § 1391(e)), it did not authorize plaintiffs to bring suit anywhere they want, just because some government actions may have nationwide effect. Plaintiffs still must satisfy the statutory standards, and they can't here.

2017 WL 4682050, at *2 (W.D. Tex. Oct. 6, 2017); *see also id.* at *2 n.1 (recognizing that defendants did "not contest" germaneness). The reasoning of those cases thus cannot answer the germaneness question posed here.

And in these circumstances, the Fort Worth Chamber lacks standing because this suit is not, in fact, germane to its organizational interests. The interest that the Fort Worth Chamber seeks to protect is the interest of a large, out-of-state card issuer to charge high late fees. *See* PI App'x 57, ECF No. 5 (Susser Decl. ¶¶ 3–7). Indeed, the only member that Plaintiffs' papers identify as allegedly harmed by the Rule—Synchrony Bank—is based in Draper, Utah. While the interest in allowing out-of-town issuers to charge high fees may be "germane" to the purpose of some of the plaintiffs with broader or different missions, it is not "germane" to the Fort Worth Chamber of Commerce's asserted purpose of "cultivat[ing] a thriving business climate *in [] Fort Worth*." PI App'x 22 (Montgomery Decl. ¶ 5) (emphasis added). The economic benefits of the previous rule accrued to large card issuers, but Plaintiffs have not identified a large card issuer based in Fort Worth (and the Bureau is aware of none). At bottom, associational standing is not supposed to allow associations to function as "a law firm seeking to sue in its own name on behalf of a client (or a firm member) alleging injury from governmental action wholly unrelated to the firm." *Humane Soc'y of the U.S. v. Hodel*, 840 F.2d 45, 57–58 (D.C. Cir. 1988). That appears to be what happened here.

In the reply brief in support of their motion for a preliminary injunction, Plaintiffs raise several new arguments for venue based on the Fort Worth Chamber's residence that cannot be traced to the venue allegations in the complaint. That is reason enough to reject the arguments. But there are others. First, Plaintiffs claim that venue is appropriate because branches of large card issuers belong to the Fort Worth Chamber and are present in the area. But they never establish that

18

branches, which don't issue cards, are affected by the Rule and so would have standing to sue in their own right. *See Students for Fair Admis., Inc.*, 600 U.S. at 199 (holding that member must have standing to sue in own right to be basis for associational standing); *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (refusing to accept "organizations' self-descriptions of their membership" and explaining that court needed "individual affidavits" from affected members so it can "assure itself that" those purportedly harmed members would in fact have standing to sue in their own right). Similar problems doom Plaintiffs' claim that venue is appropriate because the Fort Worth Chamber has small card issuer members that are indirectly affected by the Rule. Again, Plaintiffs don't establish that the indirectly affected small card issuers would have standing to sue—which is highly doubtful, given that small card issuers are not subject to the Rule, and their only theory of injury would rely on the unpredictable ways that large card issuers might react to the changed regulatory landscape. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013). The Fort Worth Chamber cannot use the interests of members with no direct interest in the dispute to establish standing.

Finally, Plaintiffs argue that "[t]he rule harms the[ ] ability [of large card issuers] to offer credit to Fort Worth consumers on favorable terms[.]" Reply ISO PI Mot. 4 (Mar. 14, 2024), ECF No. 41 ("PI Reply"). But "favorable" here means with the high late fee rate favored by out-of-state banks. Those high late fees do not favor Fort Worth consumers. And to the extent Plaintiffs mean that consumers could see higher interest rates or other negative consequences following the Rule, those consequences are not a product of the Rule, but of Plaintiffs own members' independent actions. Plaintiffs should not get a foothold to sue based on the interests of consumers in Fort Worth because their members might take independent actions that harm consumers here.

### B.  Plaintiffs' alternative bid for transactional venue fares no better.

Plaintiffs likewise cannot secure venue in this District under § 1391(e)(1)(B) on the theory that "a substantial part of the events or omissions giving rise to the claim occurred" here. On that prong, Plaintiffs argued primarily that (out-of-district) card-issuing members of Plaintiff associations have customers in this District, and therefore will feel the burdens of the challenged Rule in this District. *See* PI Reply 6. But, as this Court has already recognized, "[t]he fact that there are customers of businesses in the Northern District of Texas that will *potentially* feel the effects of the Rule does not . . . represent a substantial part of the events giving rise to the claim." Transfer Op. 5. If that were enough, there wouldn't be "a city in the country where venue would not lie, as every city has customers who may potentially be impacted by the Rule." *Id.* That would read out of the statute the requirement that a "substantial" part of the events or omissions have occurred in the venue.

Instead, that prong of the venue statute properly looks just to "the defendant's conduct, and where that conduct took place, rather than focusing on the activities of the plaintiff." *Munro v. U.S. Copyright Off.*, No. 6:21-cv-00666, 2022 WL 3566456, at *2 (W.D. Tex. May 24, 2022), *report and recommendation adopted*, 2022 WL 17400772 (W.D. Tex. Sept. 15, 2022). That would be where the Bureau issued the Rule, in Washington, D.C. Even if, as Plaintiffs would have it, "events and omissions" venue were to lie wherever regulated entities felt the *effects* of the challenged Rule, Plaintiffs would still have to identify a *plaintiff* that would be subject to a burden within the forum should the contested agency action take effect. *Career Colls.*, 2023 WL 2975164, at *2–3 (refusing to allow an associational plaintiff to rely on members to establish venue). But none of the Plaintiffs are burdened because they are associations, not large card issuers subject to the Rule. Besides, even if the burdens of their non-party members counted (and they don't), a large card issuer based *elsewhere* is not burdened *in this district* just because it has customers in Fort Worth.

## CONCLUSION

For the foregoing reasons, the Court should transfer this case to D.D.C. under 28 U.S.C. § 1404. In the alternative, it should dismiss or transfer this case to D.D.C. under 28 U.S.C. § 1406.

DATED: May 28, 2024                    Respectfully Submitted,

                                       SETH FROTMAN
                                       *General Counsel*

                                       STEVEN Y. BRESSLER
                                       *Deputy General Counsel*

                                       KRISTIN BATEMAN
                                       *Assistant General Counsel*

                                       */s/ Stephanie B. Garlock*
                                       STEPHANIE B. GARLOCK*
                                       *Counsel*
                                       D.C. Bar No. 1779629
                                       JUSTIN M. SANDBERG*
                                       *Senior Counsel*
                                       Ill. Bar No. 6278377
                                       JOSEPH FRISONE*
                                       *Senior Counsel*
                                       Va. Bar No. 90728
                                       Consumer Financial Protection Bureau
                                       1700 G St. NW
                                       Washington, D.C. 20552
                                       Stephanie.Garlock@cfpb.gov
                                       Justin.Sandberg@cfpb.gov
                                       Joseph.Frisone@cfpb.gov
                                       (202) 435-7201 (Garlock)
                                       (202) 450-8786 (Sandberg)
                                       (202) 435-9287 (Frisone)
                                       (202) 435-7024 (fax)

                                       *Admitted *pro hac vice*

                                       *Counsel for Defendants the Consumer*
                                       *Financial Protection Bureau and Rohit*
                                       *Chopra*

21

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2024, a true and correct copy of this document was served electronically by the Court's CM/ECF system to all counsel of record.

*/s/ Stephanie B. Garlock*
STEPHANIE B. GARLOCK