UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CHAMBER OF COMMERCE OF THE**
**UNITED STATES OF AMERICA, ET AL.,**

  Plaintiffs,

v.                                                                  No. 4:24-cv-00213-P

**CONSUMER FINANCIAL PROTECTION**
**BUREAU, ET AL.,**

  Defendants.

## OPINION & ORDER

On March 28, 2024, this Court transferred this case to the District Court for the District of Columbia. Ultimately, the Fifth Circuit determined that transfer was procedurally improper and invalidated the transfer. Following this Court's May 10 particularized findings and a subsequent ruling by the U.S. Supreme Court concerning a related case, the Fifth Circuit returned jurisdiction of this case for this Court to adjudicate. Accordingly, for the reasons stated below, the Court **TRANSFERS** this case to the United States District Court for the District of Columbia ("D.D.C.").[1] Given the Fifth Circuit's admonition that this Court had previously not acted swiftly enough in handling this case, the Court determines it is in the best interest of the Parties and justice to transfer the case at the earliest possible juncture.

## BACKGROUND

In January 2022, President Biden's appointed CFPB Director Rohit Chopra issued a bulletin characterizing credit card late fees as "junk

---

[1] The Court notes that Defendants filed a Renewed Motion to Transfer on the date of this order, May 28, 2024. ECF No. 94. However, because the Parties have already fully briefed their respective positions on venue, this order is based on Defendants' prior Motion to Transfer (ECF No. 52) and Plaintiffs' subsequent Response (ECF No. 55).

fees." A few weeks later, the CFPB issued a request for information from consumers to gather their viewpoints and assist in determining whether such fees should bear that taxonomy. Before receiving responses, on June 22, 2022, the CFPB issued an Advance Notice of Proposed Rulemaking, requesting information on card issuers' costs and the deterrent effects of late fees. The CFPB gave card issuers thirty days to respond with a ten-day extension added thereafter. The CFPB declined card issuers' requests for additional extensions.

On February 1, 2024, the Biden administration announced new regulations and legislative proposals designed to combat so-called junk fees. The Final Rule at issue in this case would reduce the late-fee safe harbor from $30 to $8, would no longer adjust this amount for inflation, and would reduce the cap on late fees to twenty-five percent of the missed minimum payment. The Final Rule was presented on March 5, 2024, and was slated to go into effect on May 14.

On March 7, 2024, the Chamber of Commerce of the United States of America, along with the Longview and Fort Worth Chambers of Commerce, the American Bankers Association, the Consumer Bankers Association, and the Texas Association of Business, sued the CFPB and Director Rohit Chopra in this Court. Their complaint alleges violations of the Appropriations Clause and separation of powers, as well as violations of the APA, CARD, and Dodd-Frank Acts. Ultimately, they sought a declaratory judgment that the Final Rule violates the APA. That same day, they filed a Motion for Preliminary Injunction to stay the Final Rule from going into effect, accompanied by an emergency motion for an expedited briefing schedule. Plaintiffs did not request the issuance of a Temporary Restraining Order. However, Plaintiffs asked the Court for a ten-day turnaround on their request for injunctive relief. After filing, Plaintiffs' case played musical chairs. It was originally assigned to Senior Judge Terry Means, it was then reassigned to Judge Reed O'Connor, Judge O'Connor recused from the case, and it was reassigned to the undersigned judge. This case's procedural history gets even more convoluted after that.

After an initial review of the record, on Monday, March 18, 2024, a mere two business days after receiving the case, the undersigned ordered the Parties to file supplemental briefing to determine whether

the Fort Worth Division of this Court is the appropriate venue for this case.[2] In response, Plaintiffs filed a motion on March 19, 2024, asking the Court to consider their request for injunctive relief before assessing venue. That motion informed the Court that it need not worry about venue and requested a ruling on Plaintiffs' preliminary injunction by Friday, March 22, 2024. The motion also stated that Plaintiffs would seek appellate review if the Court did not rule on the preliminary injunction by March 22, arguing any later decision would "effectively deny" their request for injunctive relief because they must provide printed notice to millions of customers by March 26, 2024. Again, Plaintiffs never requested a TRO.

The following day, on March 20, 2024, the Court denied Plaintiffs' expedited motion, explaining that the Court, per its longtime docket-management practice, must first determine whether venue is proper before ruling on an injunction that may not appropriately be before it. The next day, Defendants filed their Motion to Transfer the case to the United States District Court for the District of Columbia. Four days later, as pledged, Plaintiffs filed an interlocutory appeal of the Court's "effective denial" of their expedited preliminary injunction. On March 26, 2024, the Court ordered the Parties to meet and prepare a proposed scheduling order, set a hearing on the preliminary injunction for April 2 (the Court's first available opportunity), and ordered the Parties to attend mediation by April 19, 2024. However, on March 28, 2024, having found venue improper here, the Court transferred the case to the District of Columbia. The Fifth Circuit stayed that order so it could hear oral arguments on Plaintiffs' mandamus motion. The Fifth Circuit then

---

[2] In ten years as a Texas and federal judge, it has been the undersigned judge's standard practice to examine, and ask for briefing on, venue as early as possible in a case when it appears from a cursory review of the pleadings, as here, that the ties to the Fort Worth Division are particularly attenuated. *See, e.g., Progressive Cnty. Mut. Ins. Co. v. Keechi Transp., LLC*, No. 4:22-CV-00533-P, 2022 WL 17095927 (N.D. Tex. Nov. 21, 2022) (Pittman, J.); *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) (Pittman, J.); *Inst. for Free Speech v. Johnson*, No. 4:23-CV-0808-P, 2023 WL 7420281 (N.D. Tex. Nov. 8, 2023) (Pittman, J.).

3

granted mandamus relief, ordering that this case be reopened in Fort Worth on April 8, 2024. Thereafter, at 9:53 p.m. on April 30, the Fifth Circuit released an opinion in which it held that this Court had "effectively denied" Plaintiffs' expedited motion for preliminary injunction. Importantly, mandamus was granted because this Court lacked jurisdiction over the case pending the appeal—*not* because the transfer itself was improper. The Fifth Circuit ordered a limited remand directing this Court to make particularized findings on the preliminary injunction's merits by May 10, 2024. On May 10, this Court made such findings and concluded that under Fifth Circuit precedent, the CFPB had been declared unconstitutionally funded, and thus, the Final Rule was improperly promulgated. The Court granted the preliminary injunction.

On May 16, 2024, the Supreme Court issued its opinion, *see CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, No. 22-448, 2024 WL 2193873 (U.S. May 16, 2024), reversing the Fifth Circuit's decision that this Court relied on in granting the preliminary injunction, *see Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 643 (5th Cir. 2022). In its opinion, the Supreme Court held that the CFPB *is* constitutionally funded, and thus, this Court's previous particularized findings related to the preliminary injunction are moot. On May 20, 2024, Defendants filed a motion to immediately issue the mandate, rather than wait until the July 9, 2024, mandate date initially issued by the Fifth Circuit. Finding the motion unopposed, the Fifth Circuit granted Defendants' motion on May 24 and fully relinquished jurisdiction of the case back to this Court.

Since this Court has regained jurisdiction and there are no pending appeals, it is imperative that the Court act promptly in revisiting the venue issues that have plagued this case from its inception. The Court does so below.

## LEGAL STANDARD

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C.

§ 1404(a). Such transfer is between venues, not forums. *See In re Volkswagen of Am. Inc.*, 545 F.3d 304, 308 n.2 (5th Cir. 2008) (en banc). "It is well settled that the party moving for a change of venue bears the burden" of demonstrating good cause for why the forum should be changed. *JTH Tax, LLC v. Yong*, No. 4:22-CV-01008-O, 2023 WL 5216496, at *2 (N.D. Tex. Aug. 11, 2023) (O'Connor, J.) (internal quotation marks omitted). To carry that burden, the defendant must show that the transferee venue is "clearly more convenient than the venue chosen by the party." *Volkswagen*, 545 F.3d at 315. If the defendant does not meet this burden, then "the plaintiff's choice should be respected." *Id.*

The plaintiff's choice of venue is "a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Ent.*, 337 F.3d 429, 434–35 (5th Cir. 2003). The weight accorded the Plaintiffs' choice of venue "is diminished where the plaintiff brings suit outside his home forum." *Santellano v. City of Goldthwaite*, 3:10-CV-2533-D, 2011 WL 1429080, at *2 (N.D. Tex. Apr. 14, 2011) (Fitzwater, C.J.) (citing *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 349 (S.D.N.Y. 1988)); *see also TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 459 (N.D. Tex. 2017) (Lindsay, J.). Courts use a two-step inquiry to determine if transfer is proper. *See Volkswagen*, 545 F.3d at 312. *First*, they ask whether the plaintiff could have originally sued in the transferee district. *Id. Second*, they weigh private- and public-interest factors to determine whether a venue transfer serves the convenience of parties and witnesses and is in the interest of justice. *Id.* at 315. In reviewing a district court's transfer decision, "in no case will [the appellate court] replace a district court's exercise of discretion with [its] own; [it] review[s] only for clear abuses of discretion that produce patently erroneous results." *Volkswagen*, 545 F.3d at 312.

## ANALYSIS

The Court has already analyzed the above mentioned private- and public-interest factors listed above in its March 28 Order, which originally transferred this case to the D.D.C. *See* ECF No. 67. While the Fifth Circuit reversed that decision and ruled that the transfer was

5

improper, the majority's reasoning was based on this Court's lack of jurisdiction to transfer the case pending an appeal, *not* because the transfer analysis was improper or that the Court abused its discretion in transferring the case to a more appropriate venue. *See* ECF No. 81 at 1-14. Accordingly, given that the Court now has full jurisdiction over the case with no appeals pending, the Court again determines that transfer is appropriate for the reasons stated below.

### A. Transfer Analysis

It is indisputable that this action could have been brought in the D.D.C. A civil action against a government agency or officer in their official capacity may be brought in a "judicial district in which any defendant resides," "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or where the plaintiff resides if no real property is involved. 28 U.S.C. § 1391(e). Here, both Defendants and three of the six Plaintiffs reside in Washington, D.C., where the Rule was promulgated. Compare this with the analysis for Fort Worth, where venue is only established by the residency of one of the six Plaintiffs. Since this matter could have been brought in the D.D.C., the Court must now determine whether private- and public-interest factors weigh in favor of transfer under § 1404(a). It is important to note that it is not enough for the alternate venue to be "more likely than not to be more convenient" but that the gain in convenience must be significant and plainly obvious enough that the marginal gains will actually materialize. *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022); *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).

1. Private-Interest Factors

The private-interest factors to be considered are: (1) ease of access to sources of proof; (2) availability of compulsory process for witnesses; (3) the cost of witness attendance; and (4) all other practical factors that might make a trial more expeditious and inexpensive. *See Volkswagen*, 545 F.3d at 315.

As to the first three factors, this case will chiefly focus on the Administrative Procedure Act ("APA") and the Constitution, with little

6

to no actual physical records or evidence necessary for its resolution. While the Defendants argue that these factors weigh in favor of transfer since any documents or witnesses *would* be located in the District of Columbia, at this stage of litigation it is unclear whether there are actually witnesses or documents needed, and thus the first three factors are neutral with respect to transfer. No factor is "dispositive," and the Fifth Circuit has warned against a "raw counting of the factors that weighs each the same." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (cleaned up).

That said, the fourth factor weighs in favor of transfer. Defendants argue, particularly with respect to the lawyers in this case, that the D.D.C. is the more practical venue. ECF No. 53 at 13. The Court agrees. A review of the record shows there are ten attorneys spanning five different firms or organizations representing the various Parties in this case. Of the ten, *eight* list their offices in the District of Columbia. This means that any proceeding this Court conducts (such as a preliminary injunction hearing) will require *all* of Defendants' counsel and two-thirds of Plaintiffs' counsel to travel to Fort Worth—a task that will be charged to their clients or to the government. This would mean that taxpayers, including residents of Fort Worth, would foot an unnecessarily expensive bill for this litigation.

While true that the Fifth Circuit has held that location of counsel cannot *in itself* be a factor in § 1404(a) analysis, the Court does not consider it as an independent factor. *See In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003). The fourth factor here is "*all other practical factors* that might make a trial more expeditious and inexpensive." *See Volkswagen*, 545 F.3d at 315 (emphasis added). Substantive travel is certainly a practical factor that makes a trial more expensive, especially when a case has as many parties and attorneys as here. Further, especially when dealing with government defendants, taxpayers end up footing the bill for any excessive or unnecessary expenses. The Court recognizes that "[w]hen a defendant is haled into court, some inconvenience is expected and acceptable." *Def. Distributed*, 30 F.4th at 433. In fact, the very nature of having to defend a lawsuit at all is an inconvenience, but the Court has the discretion to weigh all practical

7

factors that make trial more expeditious and inexpensive. A holistic review of the practical factors surrounding the Parties and counsel in this case weighs in favor of transfer to the D.D.C. The Court does not share the concern that this argument will lead to *all* litigation concerning government defendants being litigated in D.D.C. As explained in its original transfer order (and reiterated below), this Court itself has handled a multitude of cases that involve federal government defendants. *See* ECF No. 67 at 6.

The Court concludes that, because most of the private interest factors are neutral or weigh in favor of transfer, the private interest factors as a whole weigh in favor of transfer.

2. Public-Interest Factors

Next, the Court must consider whether public-interest factors weigh in favor of transfer. These public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *See Volkswagen*, 545 F.3d at 315. Of the private- and public-interest factors, the public factors move the needle most toward transfer.

*First*, the Court recognizes that the D.D.C. has a busy docket. However, as discussed in the Court's Order denying Plaintiffs' Motion to Expedite, the Northern District of Texas has a significantly busier docket. *See* ECF No. 51 at 2. In 2023, each Judge in the Northern District of Texas saw an average of 287 more filings than each Judge in the D.D.C. *Id.* Indeed, the average D.D.C. Judge saw only 298 cases *at all* in 2023. *Id.* This suggests the D.D.C. would facilitate a more expeditious resolution of this time-sensitive matter. The data verify this, as cases are resolved faster in the D.D.C. than in the Northern District of Texas. The median time for disposition of a case in the D.D.C. is 5.1 months; it is 6.5 months in the Northern District of Texas. *See* U.S. Dist. Cts., *Median Time From Filing to Disposition of Civil Cases, by Action Taken* (Dec. 31, 2023), https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2023/12/31. Ordinarily, this factor

8

may have a minimal impact on transfer analysis, given the difference in times is not that far apart. However, given Plaintiffs' insistence that time is of the essence in this case, this factor more heavily favors transfer as a difference in adjudication of five to six weeks could mean immeasurable, continued irreparable harm.

*Second*, there is a strong interest in having this dispute resolved in the District of Columbia. The case chiefly involves out-of-state Plaintiffs challenging the actions of government officials taken in the District of Columbia. The fact that there are customers of businesses in the Northern District of Texas that will *potentially* feel the effects of the Rule does not create a particularized injury in the Northern District of Texas, nor does it represent a substantial part of the events giving rise to the claim. Under Plaintiffs' theory, there isn't a city in the country where venue would not lie, as every city has customers who may potentially be impacted by the Rule. Plaintiffs could find any Chamber of Commerce in any city of America and add them to this lawsuit in order to establish venue where they desire. It appears that this is exactly what Plaintiffs attempted to do by recommending transfer to the Eastern District of Texas, Tyler Division. *See* ECF No. 55 at 5. Here, once again, the only tie to the Eastern District of Texas, Tyler Division, was that one of the Plaintiffs happens to be there. None of the events occurred there and there is only a possibility that tangential harm *could* be felt by the Rule. While the Fifth Circuit has held that "the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case," the Court finds any argument on this point unpersuasive here. *Clarke*, 94 F.4th at 511. Sure, citizens of Fort Worth *could* be impacted by the Final Rule, but the interests of citizens of Fort Worth are no different than those of the citizens of Fort Wayne, Indiana or Lake Worth Beach, Florida. When looking to "localized interests" the Court does not see how Fort Worth citizens have any particularized, localized interest. D.C. has clear interests in determining the legality of rules promulgated there, but the Court cannot say the same *here* for the citizens of Fort Worth. This factor thus weighs in favor of transfer.

Venue is not a continental breakfast; you cannot pick and choose on a Plaintiffs' whim where and how a lawsuit is filed. Indeed, this is why

§ 1391(e)(1)(B) has the "substantial" qualification as one of the factors in deciding venue. Federal courts have consistently cautioned against such behavior. *See Volkswagen*, 545 F.3d at 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."); *see also Moreno v. City of N. Y.*, No. 14-cv-6062(NG), 2015 WL 403246 at *2 (E.D.N.Y. Jan. 28, 2015) (Gershon, J.) (holding that a court's discretion under 1404(a) is properly exercised to discourage judge shopping).[3] The Final Rule at issue in this case was promulgated in Washington D.C., by government agencies stationed in Washington D.C., and by employees who work in Washington D.C. Most of the Plaintiffs in this case are also based in Washington D.C. and eighty percent of the attorneys in this matter work in Washington D.C. Thus, the D.D.C. has a stronger interest in resolving this dispute, as it is the epicenter for these types of rules and challenges thereto. *See Stewart v. Azar*, 308 F. Supp. 3d 239, 289 (D.D.C. 2018) (Boasberg, J.) ("[the D.C. Circuit] has more experience with APA cases, which would weigh against transfer [out of the D.C. Circuit]").

Regarding the third and fourth factors, both the Northern District of Texas and the D.D.C. are familiar with the law that will be applied in this case. Further, despite the CFPB's apparent concerns, the Northern District of Texas is equally apt in adjudicating APA matters. *See, e.g.*, *Nuziard v. Minority Bus. Dev. Agency*, No. 4:23-cv-00278-P, 2024 WL 965299, at *41–44 (N.D. Tex. Mar. 5, 2024) (Pittman, J.); *see also Texas v. Biden*, 589 F. Supp. 3d 595 (N.D. Tex. 2022) (Pittman, J.). This should assuage Plaintiffs' hyperbolic concerns that transferring this case would force all future APA claims to be brought in the D.D.C. *See* ECF No. 55 at 14–17. Sure, the D.D.C. might see more than their fair share of APA claims as compared to other jurisdictions, just as the Southern District of Florida likely sees more maritime claims than the Northern District

---

[3]The Court in no way intends for this transfer analysis to serve as commentary on judge shopping or forum shopping. These concerns are irrelevant to this Court's venue analysis. Neither the Fifth Circuit nor the Supreme Court have mentioned judge or forum shopping as a concern for district courts to analyze when determining correct venue, and the Court does not do so here.

of Ohio. That does not mean that the Northern District of Ohio lacks the ability to adjudicate such a claim, it just means that the Southern District of Florida might have more interest or geographic proximity to the locations of the relevant parties in handling such matters. Here too, the case belongs in the D.D.C.

An easy way for Plaintiffs to guarantee proper venue is to bring cases in jurisdictions where the impact is *uniquely* and *particularly* felt, and where a *substantial* part of the events occurred. 28 U.S.C.A. § 1391(e)(1). Here, there is no unique or particular impact felt in the Northern District of Texas and little if any of the events surrounding the Final Rule have occurred here. In fact, as far as this Court can discern, not one of the member banks or credit card companies directly affected by the Final Rule is located in the Fort Worth Division.[4] Importantly, while the third and fourth factors are neutral, they (like all other private- and public-interest factors) do not favor this case remaining in the Northern District of Texas.

\* \* \*

Having considered the public- and private-interest factors, the Court concludes that the convenience of hosting the proceeding in the D.D.C. is significant and plainly obvious that the marginal gains will actually materialize, and thus this case should be **TRANSFERRED** to the United States District Court for the District of Columbia.

## CONCLUSION

This case did not belong in the Northern District of Texas and certainly not in the Fort Worth Division on March 7, it did not when this Court transferred it on March 28, and it does not today—two months later. The only apparent connection is that one Plaintiff is headquartered in the Northern District and the effects of the Final Rule will be felt generally here. But the effects of the CFPB's Final Rule will be felt in every district in the United States. Here, the Court will refrain

---

[4]Fort Worth would undoubtedly welcome any of the member banks and credit card issuers to our fast-growing and vibrant city should they decide to relocate here. To get the process started, *see* City of Fort Worth, Business Services (last visited May 28, 2024), https://www.fortworthtexas.gov/business.

11

from taking part in "creative judging" and is compelled to follow the law laid out by Congress in 28 U.S.C. § 1404(a).[5] If the venue statute means anything, they must surely mean plaintiffs have some connection to their chosen destination for filing a lawsuit. Thus, having considered the relevant private- and public-interest factors, the Court concludes that this case should be and is hereby **TRANSFERRED** to the United States District Court for the District of Columbia. As outlined in the Court's preliminary injunction order discussing its docket management, the Court welcomes more guidance from the Fifth Circuit regarding the proper way to handle the transfer of cases that seemingly do not belong with this Court or have attenuated ties to this district or division.

**SO ORDERED** on this **28th day of May 2024.**

_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE

---

[5] "One single object… [will merit] the endless gratitude of the society: that of restraining the judges from usurping legislation." *Letter from Thomas Jefferson to Edward Livingston* (Mar. 25, 1825), in 16 THE WRITINGS OF THOMAS JEFFERSON 112, 113 (Andrew A. Lipscomb & Albert Ellery Bergh eds., 1904).