**FILED**

**June 20, 2024**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 18, 2024

Lyle W. Cayce
Clerk

_____

No. 24-10463

_____

IN RE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; FORT WORTH CHAMBER OF COMMERCE; LONGVIEW CHAMBER OF COMMERCE; AMERICAN BANKERS ASSOCIATION; CONSUMER BANKERS ASSOCIATION; TEXAS ASSOCIATION OF BUSINESS,

*Petitioners.*

_____

Petition from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CV-213

_____

Before HAYNES,[*] WILLETT, and DUNCAN, *Circuit Judges.*
DON R. WILLETT, *Circuit Judge*:

This case returns to the circuit on a second petition for a writ of mandamus. The panel has changed, but the requested relief remains the same.

Plaintiffs are a group of various business associations, including one located in Fort Worth, who are challenging a new Final Rule issued by the Consumer Financial Protection Bureau (CFPB) regarding credit card late

_____

[*] Judge Haynes concurs in the judgment.

No. 24-10463

fees. Plaintiffs contend the district court abused its discretion by transferring its challenge to the United States District Court for the District of Columbia.

This young case already has a byzantine procedural history, but what's important for the moment is that the district court transferred venue—twice—under 28 U.S.C. § 1404(a). The first time, a different panel issued a writ of mandamus because the district court lacked jurisdiction to transfer the case under the one-court-at-a-time rule: Plaintiffs' appeal of the effective denial of its preliminary-injunction motion was pending before us when the district court transferred venue.[1] Because that previous mandamus ruling was jurisdictional, we had no reason to reach whether the district court had properly transferred the case under § 1404(a).

Now we do. With abiding respect for our district court colleague, we conclude that the transfer order misapplied the controlling § 1404(a) standard for transferring cases (and our precedent applying that standard), and the § 1404(a) transfer order was a clear abuse of discretion. We accordingly dissolve our earlier administrative stay, grant Plaintiffs' petition for a writ of mandamus, and direct the district court to vacate its transfer order.[2]

I

The Credit Card Accountability and Disclosure Act directs CFPB to "establish standards for assessing whether" credit card late fees are "reasonable and proportional" to the "omission or violation to which the fee or charge relates."[3] To that end, it authorizes CFPB to issue rules to

_____

[1] *In re Fort Worth Chamber of Com.*, 100 F.4th 528 (5th Cir. 2024).

[2] We administratively stayed this second transfer order before the transferee court docketed the case.

[3] *See* 15 U.S.C. § 1665d(a)–(e).

No. 24-10463

designate a "safe harbor" fee amount that is presumed to be reasonable and proportional.[4] On March 5, 2024, CFPB announced a Final Rule that decreases the previously applicable safe-harbor amount for late fees charged by the nation's largest credit card issuers from $30 and $41 to $8. The rule was originally set to take effect on May 14.[5]

Two days after the announcement, on March 7, the Fort Worth Chamber of Commerce[6] sued CFPB in the Northern District of Texas, moved for a preliminary injunction, and requested a ruling within 10 days.[7] The district court did not immediately rule on that motion[8] but instead invited CFPB to file a motion to transfer venue under § 1404(a). The Chamber appealed on March 25, arguing that the district court had effectively denied its motion for a preliminary injunction by failing to rule on it.[9]

On March 28, the district court granted CFPB's motion to transfer the case under § 1404(a) to the United States District Court for the District of Columbia (D.D.C.). The Chamber filed an emergency petition for mandamus the next day.[10] We granted the petition and held that the district court lacked jurisdiction to transfer the case. "Because the plaintiffs appealed the district court's effective denial of their preliminary-injunction motion

_____

[4] *Id.*

[5] 12 C.F.R. Part 1026.

[6] For simplicity, we refer to the group of plaintiffs as "the Chamber."

[7] The Chamber argues in its complaint that CFPB violated the Appropriations Clause, exceeded its statutory authority, offered a deficient analysis and reasoning, and adopted an effective date that violates another statute.

[8] The district court had previously found good cause to expedite briefing.

[9] That appeal was docketed in our court under case number 24-10248.

[10] That petition was docketed in our court under case number 24-10266.

No. 24-10463

before the district court granted the motion to transfer the case," we explained, "the district court acted without jurisdiction."[11] We accordingly vacated the district court's effective denial of the Chamber's motion for a preliminary injunction.[12] We later issued a limited remand, instructing the district court to rule on the preliminary-injunction motion by May 10.

On May 10, the district court entered a preliminary injunction and stayed the Final Rule. It relied on our then-binding decision in *Community Financial Services Association, Ltd. v. CFPB*, which held that Congress's decision to "abdicate its appropriations power" to CFPB "violates the Constitution's structural separation of powers."[13] Days later, on May 16, the Supreme Court reversed that decision.[14]

We then dismissed the appeal of the effective denial[15] and issued the mandate on May 24, returning full jurisdiction to the district court.

On May 28, CFPB moved to transfer the case to D.D.C. a second time. That same day, the district court did so, noting that CFPB had renewed its motion but instead ruling on the initial motion to transfer. Notwithstanding our recent exhortation in another case that district courts should stay their venue-transfer orders for a short period to allow for appellate review—an action we described as "especially deserving of

---

[11] *In re Fort Worth Chamber of Com.*, 100 F.4th at 531. This opinion more fully details the procedural history of this case as it relates to the effective denial of the preliminary injunction.

[12] *Id.* at 538.

[13] 51 F.4th 616, 623 (5th Cir. 2022).

[14] *CFPB v. Cmty. Fin. Servs. Ass'n, Ltd.*, 601 U.S. 416, 420 (2024) ("In this case, we must decide the narrow question whether this funding mechanism complies with the Appropriations Clause. We hold that it does.").

[15] This appeal was case number 24-10248.

No. 24-10463

commendation"[16]—the district court did not do so, so later that night, the Chamber petitioned for a writ of mandamus and requested a stay.

Before the D.D.C. docketed the case, we administratively stayed the district court's transfer order until June 18, 2024, pending our more considered view of the mandamus petition.[17]

## II

The standards for changing venue are found in 28 U.S.C. § 1404. Subsection (a) specifically permits a district court to "transfer any civil action to any other district or division where it might have been brought" if it is "[f]or the convenience of parties and witnesses" and "in the interest of justice."

---

[16] *In re Clarke*, 94 F.4th 502, 507 n.1 (5th Cir. 2024).

[17] Once more, "[t]his case again highlights why a district court should stay a transfer order for a short period so that opposing parties may appeal it." *In re Fort Worth Chamber of Com.*, 100 F.4th at 542 (Oldham, J., concurring). When there is no stay, we must act on an expedited timeline that can produce needless inter-circuit complications. We again exhort our district court colleagues throughout the circuit to stay venue-transfer orders for a brief time to avoid the frenzy of unnecessarily rushed mandamus proceedings. *In re Clarke*, 94 F.4th at 507 n.1.

Notably, three of Texas's four federal judicial districts have taken steps to push pause on certain transfer orders, giving opposing parties time to oppose them and reviewing judges time to review them. (The Northern District of Texas rule has been adopted. It's just not effective yet.) The Eastern District of Texas delays the transmittal of a case to the transferee court for 21 days. E.D. Tex. L.R. CV-83(b) ("Absent an order to the contrary, no sooner than the twenty-first day following an order of the court transferring or remanding a case, the clerk shall transmit the case file to the directed court."). The Southern District of Texas stays transfers outside the Fifth Circuit for 21 days. Gen. Or. 2024-2 (S.D. Tex. Feb. 28, 2024) ("[U]nless all affected parties consent to the transfer, an order that transfers a civil case or civil miscellaneous matter to a district court outside the Fifth Circuit is stayed for 21 days from the date the order is entered on the docket."). The Northern District of Texas has proposed a nearly identical 21-day rule for transfers outside the circuit. Barring modification, this rule will take effect on September 3, 2024. Special Or. No. 2-99 (N.D. Tex. June 17, 2024).

No. 24-10463

In general, a plaintiff is "master of the complaint,"[18] and, as the Supreme Court has admonished, "[t]he Court must [] give some weight to the plaintiffs' choice of forum."[19] That venue choice should be respected so long as plaintiffs meet certain requirements.[20] Put another way, "Plaintiffs are permitted to engage in a certain amount of forum shopping," though Congress has limited that privilege by enacting § 1404(a), through which "[d]efendants can protect themselves from the most blatant forum-shopping."[21] While deference is given to a plaintiff's initial choice of venue,[22]

_____

[18] *Id.* at 515–16.

[19] *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013).

[20] *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). "'Venue' refers to locality, the place within the relevant judicial system where a lawsuit should be heard according to the applicable statutes or rules." 14D Charles Allen Wright & Arthur Miller, Federal Practice & Procedure § 3801 (4th ed.). The general requirements for venue are found in 28 U.S.C. § 1391(b). Section 1392(e)(1) contains the requirements for when the defendant is an officer or employee of the United States. The Chamber relies on this latter provision for venue in this case.

[21] *In re TikTok, Inc.*, 85 F.4th 352, 357 (5th Cir. 2023).

[22] CFPB contends that venue is improper in Fort Worth, so the district court appropriately gave the Chamber's choice of venue less deference. CFPB initially moved to transfer only under § 1404(a), not § 1406(a), which governs cases that are "in the wrong division or district." When it renewed its motion, it moved under both statutes. The district court explicitly ruled only on the initial § 1404(a) motion. Its transfer order did not address whether venue is proper is the Northern District of Texas. Some district courts and Wright & Miller suggest that "[t]ransfer is possible under Section 1404(a) only if the transferor court is a proper venue." Wright & Miller, *supra* note 20, § 3850, n.11 (collecting cases). Our circuit has not addressed whether transfer under § 1404(a) is predicated on venue being proper in the transferor court, and the parties don't discuss whether it is. Accordingly, we will not opine on this issue today. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008))). Nor will we decide whether venue is proper in the Northern District of Texas. *See Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66

No. 24-10463

"[t]he underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."[23]

Concerns about inconvenience predate the enactment of § 1404(a). Recognizing that some plaintiffs may choose an inconvenient venue to harass defendants, the Supreme Court "established in the federal courts the common-law doctrine of *forum non conveniens*" in *Gulf Oil Corp. v. Gilbert*.[24] Congress enacted § 1404(a) in 1948, the year after *Gilbert* was decided.

Section 1404(a) differs from forum non conveniens in two key respects. First, instead of requiring the dismissal of a case because of inconvenient venue, § 1404(a) provides that "the remedy under the statute is simply a transfer of the case within the federal system to another federal venue more convenient to the parties, the witnesses, and the trial of the case."[25] Second, § 1404(a) contains a different standard for transfer. While forum non conveniens "traditionally imposed" a "heavy burden" on defendants because it permitted dismissal "only in favor of a substantially more convenient alternative," this burden "was dropped in the § 1404(a) context."[26] The statute allows transfer "[f]or the convenience of the parties

---

F.4th 593, 597 (5th Cir. 2023) ("[W]e have repeatedly observed, we are a court of review, not first view." (citation omitted)). In any event, the district court clearly abused its discretion in its transfer order for the reasons stated herein.

[23] *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 308, n.2, 313, 315 (5th Cir. 2008).

[24] *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)).

[25] *Id.*

[26] *Id.* at 314 (emphasis omitted) (quoting *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983)).

No. 24-10463

and witnesses, in the interest of justice."[27] Because of these changes, the Supreme Court has explained that Congress "intended to do more than just codify the existing law on forum non conveniens" by permitting transfers; rather, Congress "intended to permit courts to grant transfers upon a lesser showing of inconvenience."[28]

Fleshing out § 1404(a)'s requirements, we have held that the party "who seeks the transfer must show good cause."[29] And we recently went to pains to underscore exactly what "good cause" means. "At minimum," we stated just a few months ago, "showing 'good cause' requires the movant clearly [to] demonstrate that its chosen venue is clearly more convenient."[30] We continued: "It is the movant's burden—and the movant's alone—to 'adduce evidence and arguments that clearly establish good cause . . . .'"[31]

Importantly, we made clear that this "standard is not met if the movant merely shows that the transferee venue 'is more likely than not to be more convenient.' Likewise, 'the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer.'"[32] The bar is much higher: "to establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its

---

[27] 28 U.S.C. § 1404(a).

[28] *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

[29] *Volkswagen II*, 545 F.3d at 315 (quoting *Humble Oil & Refin. Co. v. Bell Marine Serv.*, 321 F.2d 53, 56 (5th Cir. 1963)).

[30] *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (citation and internal quotation marks omitted).

[31] *Id.* (citation omitted).

[32] *Id.* (citations omitted).

No. 24-10463

evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue."[33]

In determining whether the movant has "clearly demonstrated" good cause, courts must consider four private-interest factors and four public-interest factors.[34] Here they are:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

> The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.[35]

"No factor is of dispositive weight, and we have cautioned against a 'raw counting of the factors' that 'weigh[s] each the same.'"[36]

There are two steps to the transfer analysis. "First, the district court must ask whether the case 'might have been brought' in the destination

---

[33] *Id.* (emphasis in original).

[34] *Volkswagen II*, 545 F.3d at 316. These factors were first enunciated in *Gilbert* as factors relevant to the forum non conveniens inquiry. *Gilbert*, 330 U.S. at 508.

[35] *Id.* at 315 (quoting *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004)).

[36] *In re TikTok*, 85 F.4th at 558 (alteration in original) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013)); *see also Volkswagen II*, 545 F.3d at 315.

No. 24-10463

venue," and "[s]econd, the district court must weigh the private and public interest factors."[37]

A

The district court held, and no party disputes, that this case "might have been brought" in D.D.C. under 28 U.S.C. § 1391. We agree. So we turn to the eight factors (four private-interest and four public-interest), and here we run into significant problems.

B

First, the private-interest factors.

The district court held that the first three private-interest factors—"relative ease of access to sources of proof," "availability of compulsory process to secure the attendance of witnesses," and "the cost of attendance for willing witnesses"[38]—are neutral. Neither party argues that the district court weighed these factors incorrectly. But they hotly dispute whether the district court clearly abused its discretion in concluding that the fourth factor—"all other practical problems that make trial of a case easy, expeditious, and inexpensive"[39]—weighs in favor of transfer.

The district court determined that factor (4) weighs in favor of transfer because most of the lawyers in this case are in D.C. Thus, it reasoned that "any proceeding this Court conducts . . . will require *all* of Defendants' counsel and two-thirds of Plaintiffs' counsel to travel to Fort Worth—a task that will be charged to their clients or to the government," which in turn will

---

[37] *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022); *see also Volkswagen II*, 545 F.3d at 312; *Volkswagen I*, 371 F.3d at 203.

[38] *Volkswagen II*, 545 F.3d at 315.

[39] *Id.*

No. 24-10463

require taxpayers to "foot an unnecessarily expensive bill for this litigation." The district court acknowledged that we have previously held that the location of counsel is "irrelevant and improper for consideration in determining the question of transfer of venue."[40] But it tried to distinguish our holding on the basis that we only "held that location of counsel cannot *in itself* be a factor." Because "[s]ubstantive travel is certainly a practical factor that makes a trial more expensive," the district court reasoned, the location of counsel could be considered under factor (4).

The private- and public-interest factors derive from caselaw applying the doctrine of forum non conveniens,[41] and "[t]raditional forum non conveniens doctrine regarded the convenience and the availability of counsel as a factor to be considered on a motion to dismiss."[42] Yet "the great majority of" courts, including ours, has *not* considered this factor under § 1404(a), "saying either that it is 'irrelevant' or 'improper' to consider, or that it is to be given very little weight by the district court."[43] Why the different treatment?

> First, though Section 1404(a) expressly refers to convenience of parties and witnesses, it is silent about counsel.
>
> Second, many law firms today practice on a national basis, especially in several substantive areas of federal jurisprudence, and local counsel usually is available for appearances in court.

---

[40] *In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003) (per curiam).

[41] *Norwood*, 349 U.S. at 546 ("This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised [under § 1404(a)] is broader.").

[42] WRIGHT & MILLER, *supra* note 20, § 3850.

[43] *Id.*

No. 24-10463

Moreover, travel is easier than it once was. Of course, the particular circumstances of a case may affect the district court's attitude toward the location of counsel.[44]

Our precedent has rejected the consideration of counsel's location largely because of the first rationale. In *Volkswagen I*, we stated that "[t]he word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)."[45] Because § 1404(a) is concerned with the convenience of *parties*, not *attorneys*, we do not consider the convenience of counsel.

If there is no basis to consider the location of counsel as a standalone factor under § 1404(a), we see no reason why the location of counsel should be considered under the fourth private-interest factor. Courts must not lose sight of the convenience of *parties* when analyzing each factor. When the location of counsel is brought up in a context where transfer would make litigating the case more or less convenient for the attorneys, it is irrelevant to consider—and thus improper to consider—because it does not affect the convenience of the parties. And when it comes to the convenience of *plaintiffs*' attorneys, this makes particular sense because plaintiffs are the "master[s] of the complaint"[46] and can choose the venue when filing their case. "That characterization would mean very little if the travel costs of the

---

[44] *Id.*

[45] *Volkswagen I*, 371 F.3d at 206; *see also In re Horseshoe Ent.*, 337 F.3d at 434 ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue. Neither the plaintiff nor the Middle District Court favored us with a citation to any Supreme Court or Circuit Court decision recognizing the appropriateness of this factor nor have they cited any statutory text or any legislative history indicating the intention of Congress that such a factor be considered in deciding a motion to transfer.").

[46] *In re Clarke*, 94 F.4th at 515–16.

No. 24-10463

plaintiffs' lawyers could be used to oppose the plaintiffs' *own* choice of venue."[47] As to defendants' counsel, "[w]hen a defendant is haled into court, some inconvenience is expected and acceptable."[48] And travel costs associated with litigation are a presumed part of that inconvenience. The only argument in this case is that transfer would be more convenient for the attorneys and decrease costs. Consequently, the location of counsel is not a practical problem that would affect the convenience of the parties in this case.

Nothing we've said thus far is changed by the fact that the defendant's attorneys are government attorneys concentrated in D.C. In fact, we stated 40-plus years ago that the location of an agency's attorneys should not be considered when we made an alternative holding that a transfer would not be warranted under an identical standard ("for the convenience of the parties in the interest of justice") from another statute, 28 U.S.C. § 212(a):

> [W]e accord little weight to the fact that the Commission is located in the District of Columbia. . . . Congress, presumably knowing where the Commission would, or would likely, be located, gave no preference to the District of Columbia as the venue for review of Commission orders. Congress, in effect, left the initial venue choice to the petitioning parties, not to the Commission. We do not find the location of the attorneys a significant basis for determining venue here. . . . [M]any of the petitioners in this Court are represented by Washington, D. C. counsel, such petitioners are also represented by counsel from within this Circuit and representation by Washington, D. C. counsel may in large part merely reflect the fact that proceedings before the Commission took place there. In any event, the convenience of the parties, not of their counsel, is

---

[47] *In re Fort Worth Chamber of Com.*, 100 F.4th at 540 (Oldham, J., concurring).

[48] *Def. Distributed*, 30 F.4th at 433.

13

No. 24-10463

the more appropriate concern, and the petitioners in this Court have expressed their desire for venue to be in this Circuit.[49]

This reasoning remains spot on. If Congress wants to enshrine D.D.C. as a venue for APA challenges or cases where a federal agency or other D.C.-based government actor is the defendant, it can easily do so. But it hasn't. Instead, it determined that § 1404(a) would apply no differently in these circumstances. Allowing federal defendants to cite government counsel's convenience and travel costs as a talismanic way to wire around § 1404(a)'s text (and our precedent) would amass federal judicial power in the District of Columbia. Neither Congress's words, the wealth of precedent construing those words, nor our federalist system permit such a peculiar result.

The parties also disagree about how judicial efficiency should be considered under this factor. The Chamber asserts that this factor accounts for "judicial knowledge of a case" and says that because the district court has reviewed the Chamber's claims by entering a preliminary injunction, transfer would be inefficient. CFPB disagrees, asserting that the merits of the rulemaking challenge have not yet been addressed, so a new court would have little to catch up on. The district court didn't address whether its familiarity with the case affects this factor, so we only observe that a district court doesn't foreclose § 1404(a) transfer by ruling on a preliminary injunction that requires prompt attention. The statute sets no time limit on when a § 1404(a) motion can be brought,[50] which suggests that some familiarity with the case

---

[49] *Formaldehyde Inst., Inc. v. U.S. Consumer Prod. Safety Comm'n*, 681 F.2d 255, 262 (5th Cir. 1982) (per curiam).

[50] Our caselaw suggests only that parties who seek a transfer must act with reasonable promptness. *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.9 (5th Cir. 2017) (per curiam).

No. 24-10463

does not create judicial efficiency such that this factor weighs in favor of transfer.

In sum, the "practical problems that make trial of a case easy, expeditious and inexpensive"[51] does not weigh in favor of transfer here. The district court clearly abused its discretion by considering the convenience of counsel under this factor.

C

Second, the public-interest factors.

The district court concluded that two of the public-interest factors weighed in favor of transfer, while the other two were neutral. No party challenges the district court's holding that the "familiarity of the forum with the law that will govern the case" and "avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law" factors are neutral.[52] But the Chamber contends that the district court abused its discretion in finding that the "local interest in having localized interests decided at home" and "administrative difficulties flowing from court congestion" factors weigh in favor of transfer.[53]

1

The district court determined that the localized-interests factor weighs in favor of transfer because "[t]he case chiefly involves out-of-state Plaintiffs challenging the actions of government officials taken in the District of Columbia." It did not think that a particularized injury was created in the Northern District of Texas or that a substantial part of the events giving rise

---

[51] *Volkswagen II*, 545 F.3d at 315.

[52] *See id.*

[53] *See id.*

No. 24-10463

to the claim occurred there because customers in Fort Worth "will *potentially* feel the effects of the Rule." And finally, the district court found that Fort Worth citizens had no particular interest in adjudicating the case in comparison to any other city in the country.

With respect, this analysis clashes head-on with our recent decision in *In re Clarke*, which provided significant guidance on how to analyze the localized-interest factor. There, we explained that "[w]e do not consider the parties' connections to the venue because the local interest analysis is a public interest factor. Accordingly, the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case."[54] We directed courts to consider "the location of the injury, witnesses, and the [p]laintiff's residence" because those considerations "are useful proxies for determining what local interests exist in each venue."[55] Here, we further clarify how to determine whether there are localized interests.

Localized interests are present when "the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty."[56] "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only."[57] Consider *Volkswagen II*, where the original venue lacked contacts with the lawsuit. The case concerned a car accident that "occurred in the Dallas Division, the witnesses to the accident live[d] and [were]

---

[54] *In re Clarke*, 94 F.4th at 511.

[55] *Id.*

[56] 5 Annotated Patent Digest § 36:175.50.

[57] *Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963).

No. 24-10463

employed in the Dallas Division, Dallas police and paramedics responded and took action, the [vehicle] was purchased in Dallas County, the wreckage and all other evidence [was] located in Dallas County" and most of the plaintiffs lived in the Dallas Division.[58] Because the Dallas Division was home to almost all the events and people involved, there were local interests in Dallas.[59]

Not all cases are "localized" like *Volkswagen II*. *In re Planned Parenthood* concerned "Planned Parenthood operations—and the provision of Medicaid funds—statewide. Furthermore, the defendants and the witnesses [were] located across the state and across the country."[60] We concluded that "this [was] not the sort of localized case where the citizens of Austin ha[d] a greater 'stake' in the litigation than the citizens of Amarillo."[61] In fact, we agreed with the district court "that Austin citizens had no more interest in having this case decided at home than any other Texan."[62] In our view, a challenge to an agency's Final Rule that is set to affect credit card issuers and customers nationwide is similarly not a "localized" case. Final Rules are not meant to be "localized"—they are usually designed to affect the entire nation. That's why plaintiffs seek nationwide injunctions when a final rule is poised to go into effect—they seek to block the effect across *the nation*. Therefore, this case is not one where Fort Worth citizens have a lesser stake in the litigation than D.C. citizens.

---

[58] *Volkswagen II*, 545 F.3d at 317–18.

[59] *Id.*

[60] *In re Planned Parenthood*, 52 F.4th at 632.

[61] *Id.*

[62] *Id.* at 631–32.

No. 24-10463

This is true even though the Agency actions that resulted in the Final Rule occurred in D.C. While we focus on "*events*,"[63] our precedent supports that the events involved in the passage of a law or the promulgation of a rule are not the type of events that courts should consider under this factor. *Defense Distributed* concerned, in part, a New Jersey statute that criminalized the manufacture of weapons with a 3D printer.[64] Yet we did not hold that the citizens of New Jersey had a local interest in the case because New Jersey's legislature drafted and voted on the bill in New Jersey. Instead, we explained that "[t]he controversy over New Jersey's statute is not 'localized' to New Jersey" because the New Jersey Attorney General "projected himself across state lines and asserted a pseudo-national executive authority in Texas by seeking to bar Defense Distributed from publishing its material anywhere, chilling its speech, and reducing Texans' access to [its] materials."[65] The events leading up to the announcement of the Final Rule and its promulgation are likewise not the type of events we look to under this factor.

Moreover, "the effect of this suit is completely diffuse," just as it was in *In re Clarke.*[66] If the Chamber prevails, the Final Rule will be blocked from going into effect; indeed, the preliminary injunction that is in place already has a "nationwide effect" while the litigation proceeds.[67] Accordingly, the local interest of citizens is the same in "virtually any judicial district or division in the United States"—*all* citizens will experience the effect of this

---

[63] *In re Clarke*, 94 F.4th at 511.

[64] *Def. Distributed*, 30 F.4th at 434.

[65] *Id.* (quotation marks and citation omitted) (alteration in original).

[66] *In re Clarke*, 94 F.4th at 512.

[67] *Id.*

No. 24-10463

litigation on their potential credit card late fees.[68] Interests that are "completely diffuse" in this manner "cannot affect the local-interest determination. That's because the interest is the same in both the transferor and transferee venue. These completely diffuse local interests net out to zero—neither favoring nor disfavoring transfer."[69]

In sum, the district court clearly abused its discretion by determining that D.C. residents had a localized interest in this case just because the Final Rule was promulgated there. This is not a "localized" case, the events surrounding the announcement of the Final Rule are not the kind of events that give rise to local interests, and any localized interests in this case are "completely diffuse" and thus neutral—they neither favor nor disfavor transfer.

2

Finally, we consider "the administrative difficulties flowing from court congestion."[70] The district court determined that this factor weighs "heavily" in favor of transfer because the Northern District of Texas "has a significantly busier docket." It came to this conclusion because "each Judge in the Northern District of Texas saw an average of 287 more filings than each Judge in the D.D.C." and "cases are resolved faster in the D.D.C. . . . [as] [t]he median time for disposition of a case in D.D.C. is 6.1 months [versus] 6.5 months in the Northern District of Texas." It added that because these times are not far apart, this factor would not usually have a large impact on the transfer analysis, but "given Plaintiffs' insistence that

---

[68] *Id.* at 510.

[69] *Id.*

[70] *Volkswagen II*, 545 F.3d at 315.

No. 24-10463

time is of the essence in this case," the factor weighs "more heavily" in favor of transfer.

The district court's consideration of docket congestion and the efficiency of resolution was not, in and of itself, a clear abuse of discretion.[71] Certainly, the district court can ably assess the demands of its own docket (although speculation about *other* districts' dockets seems altogether different).[72] However, the district court also said that this factor "more heavily favors transfer" because of "Plaintiffs' insistence that time is of the essence in this case." Parties' assertions that their case needs to be decided quickly should not affect the weight of this factor. To the extent that the district court references the Chamber's efforts to obtain an expeditious ruling on its preliminary-injunction motion, that rationale for speed is no longer present because a preliminary injunction has been entered. There is no special circumstance present here that would make a five-to-six-week difference weigh "more heavily" in favor of transfer.

Finally, the parties disagree about whether the district court's familiarity with this case should affect this factor because another court would need time to familiarize itself with the case. As explained above, the statute sets no time limit on when a § 1404(a) motion must be brought, which reveals that some familiarity with a case does not have a strong effect on how any factor should be weighed. We also note that here the district court's familiarity arose because it faced a motion for a preliminary injunction that

---

[71] *See In re Clarke*, 94 F.4th at 510 ("After evaluating its own docket efficiency, the district court reasoned that D.D.C. would be able to resolve this case in a more expeditious manner. It was not clearly an abuse of discretion for the court to find that congestion favored transfer.").

[72] *Id.* at 515.

No. 24-10463

required prompt resolution. Venue also requires prompt resolution.[73] The district court acted quickly by addressing venue after regaining jurisdiction. In this circumstance, the fact that the district court already entered a preliminary injunction does not lessen the weight of this factor in favor of transfer because of familiarity. In sum, the district court did not abuse its discretion in finding this factor weighs in favor of transfer.

## D

As a reminder, the "good cause" standard applicable to § 1404(a) transfer motions "requires [CFPB] 'clearly [to] demonstrate' that its chosen venue is 'clearly more convenient.'"[74] To do this, CFPB "must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue."[75]

We have thus far held that the district court clearly abused its discretion in finding that the practical problems and local-interest factors weigh in favor of transfer. That leaves only court congestion weighing in favor of transfer. But this factor, we have repeatedly held, cannot justify transfer. "It is well-settled law that § 1404(a) transfer cannot be granted solely because of court congestion."[76] This is because court congestion "is speculative and ignores the plaintiffs' role as master of the complaint."[77] Accordingly,

---

[73] We have said that "§ 1404(a) motions [are] 'a top priority in the handling of a case.'" *In re Tik Tok*, 85 F.4th at 363 (quoting *In re Horseshoe Ent.*, 337 F.3d at 433).

[74] *In re Clarke*, 94 F.4th at 508 (quoting *Volkswagen II*, 545 F.3d at 315).

[75] *Id.* (emphasis in original).

[76] *Id.* at 515.

[77] *Id.*

No. 24-10463

CFPB has not satisfied the good-cause standard—D.D.C. is not "clearly more convenient" than the Northern District of Texas.[78]

## III

Only one question remains: whether mandamus relief is warranted.

Our settled precedent lays out three requirements for a writ of mandamus:

> (1) the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process; (2) the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable; and (3) even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.[79]

"[W]e are not to issue a writ to correct a mere abuse of discretion, even though such might be reversible on a normal appeal."[80] Rather, "a writ is appropriate to correct a clear abuse of discretion."[81] "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts."[82] When we review a transfer order as part of a mandamus petition,

---

[78] *Id.* at 508.

[79] *Volkswagen II*, 545 F.3d at 311 (alterations in original) (internal quotation marks omitted).

[80] *Id.* at 310.

[81] *Id.*

[82] *Id.* (quoting *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003)).

No. 24-10463

"we review for these types of errors, but we only will grant mandamus relief when such errors produce a patently erroneous result."[83]

Taking the three requirements in order:

Our precedent is clear that "the first 'mandamus requirement is satisfied in the motion-to-transfer context.'"[84]

The second requirement is that "the right to issuance of the writ [must] be clear and indisputable."[85] The district court erred in two principal ways: (1) considering the convenience of counsel under the "all other practical problems" factor, in disregard of our precedents which had already settled that "the convenience of counsel is not a factor to be assessed" under § 1404(a);[86] and (2) misapplying our precedents to find that D.C. residents have a localized interest in the disposition of this case. This is not a localized case; the events surrounding the promulgation of a Final Rule are not events that create localized interests; and any localized interests here are completely diffuse. These errors are not "mere abuse[s] of discretion" but "clear abuse[s] of discretion."[87] "And, as we observed in *TikTok*, we have granted mandamus for less egregiously erroneous transfers. Indeed, in *Radmax*, we granted mandamus when 'three factors weighed in favor of transfer' and 'five factors were neutral.'"[88] Here again, our recent *In re Clarke* decision,

---

[83] *Id.*

[84] *In re TikTok*, 85 F.4th at 358 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam)).

[85] *Volkswagen II*, 545 F.3d at 311.

[86] *Volkswagen I*, 371 F.3d at 203; *see also In re Horsehoe Ent.*, 337 F.3d at 434.

[87] *Volkswagen II*, 545 F.3d at 310.

[88] *In re Clarke*, 94 F.4th at 516 (citing *In re TikTok*, 85 F.4th at 358 and *In re Radmax*, 720 F.3d at 290).

No. 24-10463

which granted mandamus relief and which we are bound to follow, is instructive. There, as here, there was only one factor, congestion, that arguably weighed in favor of transfer.[89] Indeed, the parallels between *In re Clarke* and this case are striking.

That leaves the final requirement—whether, in the exercise of our discretion, we think "the writ is appropriate under the circumstances."[90] "[W]rits of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case."[91] This is a case where the issues implicate not only these parties' interests, but the interests of all parties who litigate against government defendants located in D.C. and seek to have their cases heard by judges and juries outside the nation's capital. Granting mandamus is also appropriate when we "clarify to this district court and others" how to engage in the § 1404(a) transfer analysis.[92]

Summing up: Each and every requirement for mandamus relief is met here. We do not question the assiduousness of our district court colleague. But we do urge district courts—once again—to prudently adopt a practice "especially deserving of commendation": staying their venue-transfer orders for a short time so that opposing parties may have time to seek review, if warranted, on a less hurried/harried basis.[93] Doing so here would have avoided—not once but twice—the unfortunate circumstance of considering a mandamus proceeding on a highly expedited timeline. Controlling venue

---

[89] *Id.*

[90] *Volkswagen II*, 545 F.3d at 311.

[91] *Id.* at 319.

[92] *In re Fort Worth Chamber of Com.*, 100 F.4th at 542 (Oldham, J., concurring).

[93] *In re Clarke*, 94 F.4th at 507 n.1.

No. 24-10463

and transfer rules preclude sending this case to Washington, D.C. With surpassing respect for the conscientious district court judge, we conclude on these facts and this record that mandamus relief is appropriate.

\*       \*       \*

Accordingly:

- Our administrative stay of the transfer order is DISSOLVED.
- The petition for a writ of mandamus is GRANTED.
- The district court is directed to vacate its May 28 transfer order.[94]

_____

[94] Again, transfer to D.C. was not complete because we stayed the transfer order before it was docketed in the transferee court, so there is no need to direct the district court to reopen the case and request the case back.