**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; FORT WORTH CHAMBER OF COMMERCE; LONGVIEW CHAMBER OF COMMERCE; AMERICAN BANKERS ASSOCIATION; CONSUMER BANKERS ASSOCIATION; and TEXAS ASSOCIATION OF BUSINESS, | |
| Plaintiffs, | |
| v. | Case No.: 4:24-cv-213-P |
| CONSUMER FINANCIAL PROTECTION BUREAU; and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau, | |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FORT WORTH
CHAMBER OF COMMERCE FOR LACK OF STANDING AND TRANSFER THIS
CASE TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

Introduction ........................................................................................................... 1

Background ............................................................................................................ 2

Argument .............................................................................................................. 6

    I.      The Fort Worth Chamber cannot satisfy the standards for associational standing, so it should be dismissed from this case for lack of jurisdiction. .................................... 6

          A.     This lawsuit is not germane to the Fort Worth Chamber's mission of cultivating a thriving business climate in Fort Worth............................................ 7

          B.     The Court must adequately police Plaintiffs' transparent efforts to expand the associational standing doctrine to create an improper end-run around the venue limitations for suits against the federal government. .................................. 12

    II.     After dismissing the Fort Worth Chamber, the Court should transfer this case to D.D.C. because venue is improper here....................................................................... 13

Conclusion .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
  627 F.3d 547 (5th Cir. 2010) ................................................................................. 7

*Bldg. & Constr. Trades Council of Buff., N.Y. & Vicinity v. Downtown Dev., Inc.*,
  448 F.3d 138 (2d Cir. 2006) ...................................................................... 1, 8, 9

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) ................................................ 14, 15

*CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*,
  601 U.S. 416 (2024) .............................................................................................. 8

*Chamber of Com. of U.S. of Am. v. CFPB*,
  2023 WL 5835951 (E.D. Tex. Sept. 8, 2023) ...................................................... 8

*Chamber of Com. of U.S. v. IRS*,
  2017 WL 4682050 (W.D. Tex. Oct. 6, 2017) ...................................................... 8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................ 12

*Clark & Reid Co. v. United States*,
  804 F.2d 3 (1st Cir. 1986) .................................................................................. 14

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) ............................................................................... 3

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ...................................................................................... 12, 13

*Humane Soc. of the U.S. v. Hodel*,
  840 F.2d 45 (D.C. Cir. 1988) ..................................................................... 8, 10, 12

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ............................................................................................ 7

*In re Chamber of Com. of U.S. of Am.*,
  105 F.4th 297 (5th Cir. 2024) .......................................................................... 5, 6

*In re Fort Worth Chamber of Com.*,
  100 F.4th 528 (5th Cir. 2024) ............................................................................. 5

*Inst. of Certified Pracs., Inc. v. Bentsen*,
  874 F. Supp. 1370 (N.D. Ga. 1994) .................................................................. 14

*Munro v. U.S. Copyright Off.*,
  2022 WL 3566456 (W.D. Tex. May 24, 2022) ..................................................... 15

*Nat'l Ass'n of Priv. Fund Managers v. SEC*,
  103 F.4th 1097 (5th Cir. 2024) ........................................................................... 14

*Seville v. Maersk Line, Ltd.*,
  53 F.4th 890 (5th Cir. 2022) ............................................................................... 16

*Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*,
  677 F.3d 720 (5th Cir. 2012) ................................................................................. 8

*Students for Fair Admis., Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023) ................................................................................... 4, 7, 11

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ............................................................................................ 11

*Sundell v. Cisco Sys. Inc.*,
  111 F.3d 892 (5th Cir. 1997) ............................................................................... 16

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996) ......................................................................................... 7, 8

*Woodke v. Dahm*,
  70 F.3d 983 (8th Cir. 1995) ................................................................................ 13

**Statutes**

15 U.S.C. § 1665d(a) ................................................................................................ 2

28 U.S.C. § 1391(e) ............................................................................................... 13

28 U.S.C. § 1391(e)(1) ........................................................................................... 14

28 U.S.C. § 1391(e)(1)(A) ........................................................................................ 6

28 U.S.C. § 1391(e)(1)(B) ................................................................................... 2, 14

28 U.S.C. § 1404(a) ............................................................................................. 4, 5

28 U.S.C. § 1406(a) ............................................................................................... 15

**Regulations**

Credit Card Penalty Fees (Regulation Z), Final Rule,
  89 Fed. Reg. 19128 (Mar. 15, 2024) ................................................................ 2, 3, 9

**Other Authorities**

*About*, Fort Worth Chamber,
    https://www.fortworthchamber.com/about/ (last visited July 29, 2024) ................................... 8

*Public Policy: Advocacy for Business*, Fort Worth Chamber,
    https://www.fortworthchamber.com/public-policy/ (last visited July 29, 2024)....................... 9

## INTRODUCTION

From the outset of this case, the Court has expressed significant "concerns regarding whether the Fort Worth Division of the Northern District of Texas is the correct venue to hear this lawsuit." *See* Order (Mar. 18, 2024), ECF No. 45. In its most recent briefing order, the Court clarified that these "deep[] concern[s]" extend to "the issue of associational standing," and in particular the status of the Fort Worth Chamber of Commerce as a Plaintiff. *See* Order (July 18, 2024), ECF No. 108. As the Court recognized, the Fort Worth Chamber of Commerce has only one member affected by the challenged Consumer Financial Protection Bureau rule, and "that member seemingly joined the Fort Worth Chamber of Commerce to establish venue in this very busy division." *Id.* at 1–2.

The Court's concerns are well founded. The Fort Worth Chamber of Commerce lacks associational standing and should be dismissed from this case. In particular, the Fort Worth Chamber fails to adequately establish that the interests Plaintiffs seek to advance in this litigation—which challenges a new regulation governing the late fees charged by the 30 to 35 largest credit card issuers in the country—are germane to the organization's purpose. The Fort Worth Chamber has a distinctly localized purpose, not a nationwide one: Its stated mission is to improve the business climate in Fort Worth. But not one of those larger card issuers is based in or even particularly tied to Fort Worth. By the Fort Worth Chamber's own admission, it sues on behalf of a Utah-based member bank with no physical presence in Fort Worth to vindicate that out-of-state entity's interest in charging high late fees to consumers nationwide, including consumers in Fort Worth. It seems the Fort Worth Chamber, in this case, is operating as a "litigious organization[] forcing the federal courts"—here, the *wrong* federal court—to resolve an issue "as to which the organization[]" itself "enjoy[s] little expertise and about which few of [its] members demonstrably care." *Bldg. & Constr. Trades Council of Buff., N.Y. & Vicinity v. Downtown Dev.,*

1

*Inc.*, 448 F.3d 138, 149 (2d Cir. 2006). Associational standing doctrine does not allow such a result. The Court therefore should reject Plaintiffs' efforts to expand associational standing doctrine beyond its constitutional limits.

Once it dismisses the Fort Worth Chamber from this suit, the Court should transfer the case because venue here is improper. While Plaintiffs have asserted that venue in this district is nevertheless proper because a substantial part of the events giving rise to their claims occurred here, 28 U.S.C. § 1391(e)(1)(B), that claim is unsupportable. Even if the Court were to accept Plaintiffs' argument that the effects of regulatory actions qualify as events giving rise to the claim for the purposes of the relevant venue statute, no larger card issuer is based in Fort Worth and would feel its effects here. All Plaintiffs are left with is the fact that those larger card issuers have customers in Fort Worth. But endorsing that approach would essentially eliminate the restrictions on venue that Congress put in place—allowing any regulated entity to bring suit in any place it operates, without even going through the motions of joining a local chamber of commerce. The Court should therefore hold that Plaintiffs are unable to establish venue in this District and transfer the case to the U.S. District Court for the District of Columbia—where all agree this case could have been brought in the first instance.

## BACKGROUND

Plaintiffs challenge a regulation under a provision of the Credit Card Accountability and Disclosure Act (the CARD Act) requiring that the fees credit card issuers impose on consumers who fail to pay on time must be "reasonable and proportional" to the violation. *See* 15 U.S.C. § 1665d(a). Exercising authority granted to it under the CARD Act, the Consumer Financial Protection Bureau (the Bureau) issued a final rule on credit card late fees in early March. *See Credit Card Penalty Fees (Regulation Z)*, 89 Fed. Reg. 19128 (Mar. 15, 2024) (the Late Fee Rule or Rule). Most significantly, the new Late Fee Rule repeals the existing safe harbor for a fee

amount presumed to be "reasonable and proportional" to the late payment and adopts a new, lower safe harbor. *Id.* at 19155. Those changes apply only to the approximately 30 to 35 largest credit card issuers in the country. *Id.* at 19144, 19155. The Late Fee Rule was originally set to take effect on May 14, 2024. *Id.* at 19188.

Two days after the Bureau published the Rule on its website, Plaintiffs sued to challenge the regulation. Plaintiffs are six business associations of varying sizes and scopes. Three are national business organizations based in Washington, D.C.—the U.S. Chamber of Commerce, the American Bankers Association, and the Consumer Bankers Association. *See* PI App'x 35, ECF No. 5 (Quaadman Decl. ¶ 4); PI App'x 47 (Sharp Decl. ¶ 2); PI App'x 27 (Pommerehn Decl. ¶ 2). Two—the Texas Association of Business and the Longview Chamber of Commerce—are based in other parts of Texas and focus on state or local economic development. *See* PI App'x 14 (Hamer Decl. ¶¶ 4–6); PI App'x 7 (Hall Decl. ¶ 4). Only one—the Fort Worth Chamber of Commerce—is located in the Fort Worth Division or the Northern District more generally, where Plaintiffs chose to sue. *See* PI App'x 20–25 (Mar. 7, 2024) (Montgomery Decl.). Plaintiffs each claim "associational standing to bring this suit on behalf of members that are adversely affected by the challenged regulations"—namely, "members who issue credit cards" and charge late fees. Compl. ¶¶ 18–19, ECF No. 1.

In their complaint, Plaintiffs raised a constitutional challenge to the Rule based on the Fifth Circuit's holding in *Community Financial Services Ass'n of America, Ltd. v. CFPB*, 51 F.4th 616, 638 (5th Cir. 2022)—which the Supreme Court has since reversed, *see CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416 (2024). Plaintiffs also raised four claims under the Administrative Procedure Act (APA). They immediately moved for a preliminary injunction on their constitutional claim and a subset of their APA claims. *See* PI Mot. (Mar. 7, 2024), ECF No. 3.

The Bureau first challenged the Fort Worth Chamber's standing in response to that motion. *See* Opp'n Br. (Mar. 12, 2024), ECF No. 23 ("PI Opp'n"). Among other arguments, the Bureau contended that the Fort Worth Chamber—Plaintiffs' primary hook for venue in the Northern District of Texas—cannot satisfy the associational standing test's requirement that the interests it seeks to vindicate with this suit "are germane to the organization's purpose." *Id.* at 11 (quoting *Students for Fair Admis., Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023)). As the Bureau pointed out, while the Fort Worth Chamber's stated mission is to "cultivate a thriving business climate in the Fort Worth region," PI App'x 22 (Montgomery Decl. ¶ 4), the interests it seeks to further in this suit are that of a large, out-of-state card issuer—Synchrony Bank of Draper, Utah—to charge consumers unjustifiably high late fees under the old regime. *See* PI Opp'n 11. As it turns out, not one of the 30 to 35 larger card issuers that will be affected by the Late Fee Rule's safe harbor changes is based in Fort Worth. *Id.* The Bureau contended that the Fort Worth Chamber therefore does not have associational standing, making venue in the Northern District of Texas improper and Plaintiffs unlikely to succeed on the merits of their claims here. *See id.* at 9–12.

After reviewing the complaint and preliminary injunction briefing, the Court issued an order identifying significant "concerns" over whether this was "the correct venue to hear this lawsuit," given "that there appears to be an attenuated nexus to the Fort Worth Division." Order (Mar. 18, 2024), ECF No. 45. The Court invited the Bureau to move to transfer the case under 28 U.S.C. § 1404(a)—which allows for discretionary transfer "for the convenience of parties" and "in the interest of justice"—which the Bureau did on March 21. *See id.*; *see* Transfer Mot. (Mar. 21, 2024), ECF No. 52.

4

Over the following three months, the parties litigated the propriety of transfer in both this Court and the Fifth Circuit. Several developments regarding venue are particularly relevant to the resolution of this motion.

First, on March 28, the Court for the first time transferred this case to the U.S. District Court for the District of Columbia under § 1404(a). *See* Op. & Order (Mar. 28, 2024), ECF No. 67. On mandamus review, the Fifth Circuit vacated that transfer order, holding that this Court lacked jurisdiction to transfer at the time of the order because Plaintiffs had already appealed the "effective denial" of their then-pending preliminary injunction motion. *See In re Fort Worth Chamber of Com.*, 100 F.4th 528, 531 (5th Cir. 2024).

When the case returned in full to this Court again, on May 28, the Bureau renewed its request for transfer under § 1404(a), and it formally moved for the first time to transfer or dismiss for improper venue under 28 U.S.C. § 1406 based on the Fort Worth Chamber's lack of standing. *See* Renewed Transfer Mot. (May 28, 2024), ECF No. 94; Br. in Supp. of Renewed Transfer Mot. 6–14, 14–20 (May 28, 2024), ECF No. 95 ("Renewed Transfer Br.").

Later that same day, the Court transferred the case to D.D.C. based on the § 1404(a) arguments the Bureau had made in its original March 21 motion. *See* Op. & Order 1 n.1 (May 28, 2024), ECF No. 96 ("May Transfer Op."). The Court did not address the Bureau's claim that the Fort Worth Chamber does not have standing to sue, nor its related argument that the case should therefore be transferred under § 1406.

Plaintiffs again sought mandamus to reverse this Court's transfer decision, and the Fifth Circuit granted that relief in June. *See In re Chamber of Com. of U.S. of Am.*, 105 F.4th 297 (5th Cir. 2024). In its opinion, the Fifth Circuit noted that this Court had only "explicitly ruled' on the Bureau's request for transfer under § 1404(a) and had not reached the question whether this case

had been filed "in the wrong division or district." *Id.* at 303 n.22. The Fifth Circuit declined to "decide whether venue is proper in the Northern District of Texas" in the first instance. *Id.* In accordance with the Fifth Circuit's mandamus opinion on the § 1404(a) question, this Court vacated its May 28 transfer order and reopened the case. *See* Order (July 16, 2024), ECF No. 104.

After the Court reopened the case, the Bureau filed a notice of supplemental authority relating to the associational standing argument raised in its motion to transfer or dismiss under § 1406. *See* Notice of Suppl. Auth. (July 18, 2024), ECF No. 107. Later that afternoon, the Court ordered the parties to file full and formal "briefing on the issue of associational standing." Order 2 (July 18, 2024), ECF No. 108. The Court stated that it is "deeply concerned with the issue of associational standing," and particularly the use of "the Fort Worth Chamber of Commerce to establish venue in this very busy division." *Id.*

In accordance with that order, the Bureau now moves to dismiss the Fort Worth Chamber of Commerce from this case because it cannot satisfy the requirements for associational standing. The Bureau further requests that the Court hold that venue in this District is improper—because no Plaintiff with standing resides here, and because there is otherwise no basis for venue in the Northern District of Texas—and transfer this case to D.D.C., which all parties agree is a proper venue for this suit. *See* May Transfer Op. 6; 28 U.S.C. § 1391(e)(1)(A) (allowing suit where a defendant in the action resides).

## ARGUMENT

## I.     The Fort Worth Chamber cannot satisfy the standards for associational standing, so it should be dismissed from this case for lack of jurisdiction.

The Court should first dismiss the Fort Worth Chamber because it does not have standing to bring this suit. Because the Fort Worth Chamber is a membership association—not a larger credit card issuer itself affected by the Late Fee Rule's alterations to the regulatory safe harbor—

it must satisfy the requirements for associational standing. In particular, to challenge the Late Fee Rule on its members' behalf, the Fort Worth Chamber must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admis.*, 600 U.S. at 199 (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). The Fort Worth Chamber falters on the second requirement—that the suit be germane to the organization's purpose.[1]

### A. This lawsuit is not germane to the Fort Worth Chamber's mission of cultivating a thriving business climate in Fort Worth.

The germaneness test arises out of the "constitutional necessity" of "assuring" adequate "adversarial vigor." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 556 (1996). In particular, the "demand that an association plaintiff be organized for a purpose germane to the subject of its member's claim raises an assurance that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." *Id.* at 555–56. So, while litigation must only be "pertinent" to the organization's interests to qualify as germane, *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010), the germaneness requirement still operates as an important constitutional "backstop": It "serves the standing requirement's critical separation-of-powers goal of restricting the federal judiciary to the proper—and properly limited—role of

---

[1] The Bureau focuses here on the associational standing of the Fort Worth Chamber of Commerce because the Court has asked for briefing on that subject, and because only that Plaintiff's status is relevant to Plaintiffs' efforts to secure venue in the Northern District of Texas. The Bureau does not concede that the Texas Association of Business and the Longview Chamber of Commerce can satisfy the associational standing test. But because their status is not relevant to the venue question at issue here, this motion does not provide further analysis of those Plaintiffs' standing.

courts in a democratic society," *Humane Soc. of the U.S. v. Hodel*, 840 F.2d 45, 57–58 (D.C. Cir. 1988) (internal quotation marks omitted). Ultimately, "the 'germaneness' requirement of *Hunt* should be read in accordance with the 'modest yet important' goal 'of preventing litigious organizations from forcing the federal courts to resolve numerous issues as to which the organizations themselves enjoy little expertise and about which few of their members demonstrably care.'" *Bldg. & Constr. Trades Council of Buff., N.Y. & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 149 (2d Cir. 2006) (quoting *Hodel*, 840 F.2d at 57).

The Fort Worth Chamber cannot satisfy the germaneness requirement because its challenge to the Bureau's Late Fee Rule is not pertinent to the organization's purpose.[2] As the Fort Worth Chamber has framed it in this litigation, the organization's "core mission is to cultivate a thriving business climate in the Fort Worth region." PI App'x 22 (Montgomery Decl. ¶ 5). Its website articulates a vision for the organization that is similarly geographically circumscribed: to "[d]rive the Fort Worth region to be the most thriving, inviting community for all." *About*, Fort Worth Chamber, https://www.fortworthchamber.com/about/ (last visited July 29, 2024). While the association advocates on public policy issues—including at the federal level—it does so in order

---

[2] The Bureau recognizes that a footnote in this Court's preliminary injunction opinion, which the Court was required to issue on an expedited basis, states that the Fort Worth Chamber of Commerce "does qualify for associational standing." Op. & Order 7 n.3 (May 10, 2024), ECF No. 82 ("PI Op."). But the Court is free to reconsider and reverse conclusions made in "interlocutory orders for any reason it deems sufficient." *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727–28 (5th Cir. 2012). As the Bureau explained in more detail in its pending § 1406 motion filed on May 28, there is sufficient reason to reconsider that determination. *See* Renewed Transfer Br. 15–18. The Court based its conclusion entirely on "the detailed standing analysis conducted by [two] other federal district courts in the Fifth Circuit involving" U.S. Chamber of Commerce regulatory challenges—but neither of those cases involved germaneness challenges to the standing of the party used to secure venue. *See* PI Op. 7 n.3 (citing *Chamber of Com. of U.S. of Am. v. CFPB*, No. 6:22-cv-00381, 2023 WL 5835951, at *6–7 (E.D. Tex. Sept. 8, 2023); *Chamber of Com. of U.S. v. IRS*, No. 1:16-cv-944-LY, 2017 WL 4682050, at *2 (W.D. Tex. Oct. 6, 2017)).

to "champion[] Fort Worth's quality of life and business community." *Public Policy: Advocacy for Business*, Fort Worth Chamber, https://www.fortworthchamber.com/public-policy/ (last visited July 29, 2024).

Plaintiffs' challenge to the Bureau's Late Fee Rule is disconnected from that mission of regional economic development in Fort Worth. The Rule alters the regulatory framework governing the late fees charged by the largest card issuers in the country—in particular, those issuers that, together with their affiliates, have one million or more open credit card accounts. 89 Fed. Reg. at 19143–44. The Fort Worth Chamber purports to sue on behalf of one of those affected issuers—Synchrony Bank, of Draper, Utah—but that larger card issuer member is not based in Fort Worth, nor does it have any special tie to the region or its economy. *See* PI App'x 56 (Susser Decl. ¶¶ 3, 8) (noting Synchrony is a member of the Fort Worth Chamber and claiming that it will be injured by the Final Rule). In fact, the Bureau is not aware of a single larger card issuer—an estimated 30 to 35 nationwide, 89 Fed. Reg. at 19144—located in Fort Worth or elsewhere in the Northern District of Texas. Were Synchrony or another one of those larger card issuers based in Fort Worth, the Fort Worth Chamber might have a more colorable claim that protecting that regulated entity's financial interests is pertinent to the economic vitality of the Fort Worth region. But allowing an *out-of-town* issuer like Synchrony to charge high late fees under federal regulations is not relevant to the Fort Worth Chamber's stated mission of improving the economy or business climate *in Fort Worth*. Under these circumstances, then, there is no "guarantee[] that the grievances expressed in" this lawsuit "apply to a critical mass of association members," *Hodel*, 840 F.2d at 58 n.21, or that the case "bears a reasonable connection to the association's knowledge and experience," *Bldg. & Constr. Trades Council*, 448 F.3d at 149. The Fort Worth Chamber therefore cannot have associational standing to bring this suit.

Plaintiffs have urged the Court to hold otherwise, contending that this lawsuit is still relevant to the Fort Worth Chamber's regional focus, even though none of the entities directly affected by the Late Fee Rule is headquartered here. *See* Reply ISO Prelim. Inj. Mot. 3–4 (Mar. 14, 2024), ECF No. 41 ("PI Reply"). The Court should reject these arguments, which mangle the associational standing test and ignore the specific way the Late Fee Rule will affect the credit card industry and its consumers.

Plaintiffs first suggest that this regulation targeted at larger credit card issuers headquartered elsewhere—including Synchrony—is relevant to the Fort Worth Chamber's mission because such a regulation can affect Fort Worth consumers and the Fort Worth economy. They contend that, because larger issuers "have customers in the District" and the Rule would "harm[] their ability to offer credit to Fort Worth consumers on favorable terms," there will be a predictable "[e]ffect[] [on] the region's business climate" sufficient to satisfy the germaneness requirement. PI Reply 4. But "favorable" here means with the high late fee rate favored by out-of-state card issuers. Those high late fees do not favor Fort Worth consumers. And to the extent Plaintiffs mean that consumers (including in Fort Worth) could see higher interest rates or other negative consequences after the Late Fee Rule goes into effect, those (speculative) consequences are not a product of the Rule, but of Plaintiffs' own members' independent actions. The Rule does not require larger card issuers to make up revenue lost from lower late fees at all, let alone in ways that pass the costs on to Fort Worth consumers in the form of other fees and charges. Plaintiffs should not get a foothold to sue based on the interests of Fort Worth consumers because Plaintiffs' members might take independent actions that harm Fort Worth consumers.

Plaintiffs also claim that that this suit furthers the interests of "Fort Worth's growing financial services industry,'" which includes both local branches of larger card issuers subject to

10

the Late Fee Rule and smaller card issuers that are "indirectly[] affected" by the Rule. *Id.* (internal quotation marks omitted). But Plaintiffs have not established that the Late Fee Rule—which again only regulates the late fees charged by larger card issuers based elsewhere—would have a meaningful enough effect on those branches or smaller card issuers to make this suit one that furthers their financial interests, and thus the interests of the Fort Worth economy. Moreover, to sue on behalf of any local branch or a smaller card issuer member—though Plaintiffs never bother to identify one in their papers—the Fort Worth Chamber would need to show that those members would have standing to sue in their own right, as required by the first prong of the associational standing test. *See Students for Fair Admis.*, 600 U.S. at 199 (holding that member must have standing to sue in its own right to be basis for associational standing); *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (refusing to accept "organizations' self-descriptions of their membership" and explaining that court needed "individual affidavits" from affected members so it can "assure itself that" those purportedly harmed members would in fact have standing to sue in their own right).

The Fort Worth Chamber has not established that local branches of larger card issuers headquartered elsewhere even have the capacity to sue and be sued, let alone that they themselves suffer injury: The Fort Worth Chamber has offered no evidence that they issue cards, collect late fees themselves, or will lose revenue at the branch-level if late fee charges go down. It likewise has not established that smaller card issuers, which are not directly subject to the changes to the late fee safe harbor instituted in the Late Fee Rule, would be sufficiently injured by the Rule to have standing to sue in their own right. That's highly doubtful, given that any theory of injury would rely on the unpredictable ways that larger card issuers might react to the changed regulatory landscape. *See* PI App'x 24 (Montgomery Decl. ¶ 15) (asserting that smaller card issuer members

11

"will be harmed by the market pressure to lower their own late fees" based on how larger issuers

react to the Late Fee Rule); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (noting "usual

reluctance to endorse standing theories that rest on speculation about the decisions of independent

actors"). The Fort Worth Chamber thus cannot use the interests of unnamed members with no

direct interest in the dispute to establish standing.

### B. The Court must adequately police Plaintiffs' transparent efforts to expand the associational standing doctrine to create an improper end-run around the venue limitations for suits against the federal government.

As the Bureau has outlined above, the germaneness requirement operates as a significant

constitutional "backstop" against suits where, as here, there is a "wholesale mismatch between

litigation topics and organizational expertise," such that associational plaintiffs operate as little

more than "law firms with standing." *Hodel*, 840 F.2d at 57–58. The Fort Worth Chamber's claim

of associational standing risks blowing up that backstop. Under Plaintiffs' theory, an injured larger

card issuer like Synchrony could have chosen to join the regional chamber of commerce in any

place where consumers have credit cards—shopping for a hook for venue much in the same way

it shops for a lawyer to litigate the case. The Court should reject this effort and ensure that

associational standing's constitutional limits are respected.

Doing so is all the more important given larger questions about whether allowing

associations like Plaintiffs here to bring suit on behalf of absentee members comports with Article

III. Justice Thomas raised just such concerns in a recent concurring opinion about associational

standing in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 144 S. Ct. 1540, 1565–70

(2024) (Thomas, J., concurring), a case addressing a membership organization's standing to

challenge certain regulatory actions. In that concurrence, Justice Thomas questioned whether

associational standing generally "can be squared with Article III's" limitations on judicial power.

*Id.* at 1570. Justice Thomas explained that associational standing "seems to run roughshod over"

12

the "traditional understanding" that "private parties could not bring suit to vindicate the . . . rights of" others "who are not before the court." *Id.* at 1566. And he noted that the doctrine "distorts" the "traditional understanding" that, for standing to exist, the court "must be able to provide a remedy that can redress *the plaintiff's* injury." *Id.* at 1567–68 (cleaned up, emphasis in original). Those risks to traditional notions of party presentation identified in Justice Thomas's concurrence underscore why the Court should not allow Plaintiffs here to dramatically expand associational standing, beyond even what's allowed by the precedent Justice Thomas criticized.

And if allowed to continue unabated, the gambit Plaintiffs try here—using a regional chamber of commerce with little-to-no meaningful connection to the case—also risks undermining the limits in the statute governing where suits against the government can be brought. Statutory venue limitations are designed to protect defendants' equities. *See Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("One of the central purposes of statutory venue is to ensure that a defendant is not haled into a remote district having no real relationship to the dispute."). And while Congress made the venue provisions more pro-plaintiff with respect to suits against the federal government (by allowing suits in the district of a plaintiff's residence, if no real property is at issue, 28 U.S.C. § 1391(e)), it did not authorize plaintiffs to bring suit anywhere they want, just because some government actions may have nationwide effect. The Fort Worth Chamber's theory of standing would upset the careful balance Congress set, so the Court should reject it now.

## II.   After dismissing the Fort Worth Chamber, the Court should transfer this case to D.D.C. because venue is improper here.

Once the Fort Worth Chamber is dismissed from the case, the Court should transfer this case to D.D.C. because it will be abundantly clear that venue in the Northern District of Texas is improper—and has been all along. In suits against the federal government, venue is proper where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise

13

to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). At various stages of this litigation, Plaintiffs have claimed that venue is proper under prongs (B) and (C). They cannot meet their burden to establish venue on either prong. *See Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 4:23-cv-0206-P, 2023 WL 2975164, at *1 (N.D. Tex. Apr. 17, 2023) ("[A]fter venue is raised by a defendant, the plaintiff has the burden to prove that venue is proper.").

Starting with plaintiff's residence, the Fort Worth Chamber of Commerce is the only Plaintiff named in the complaint that resides in the Northern District of Texas. *See* Compl. ¶¶ 9–14. Once it is appropriately dismissed from the case, no Plaintiff will reside in this District or Division. *See Clark & Reid Co. v. United States*, 804 F.2d 3, 5 (1st Cir. 1986) (explaining that plaintiff that creates venue must have standing); *Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) (noting that Plaintiffs cannot "manufacture venue by adding . . . a party" that "lacks standing to bring th[e] action"); *Nat'l Ass'n of Priv. Fund Managers v. SEC*, 103 F.4th 1097, 1109 (5th Cir. 2024) (considering claim that venue is improper because only plaintiff in venue lacked standing, but ultimately deciding that key plaintiff did have standing to sue).

Without the Fort Worth Chamber on their roster, all Plaintiffs are left with to establish venue is their claim, under § 1391(e)(1)(B), that "a substantial part of the events or omissions giving rise to the claim occurred" here. On that prong, Plaintiffs have argued primarily that (out-of-district) card-issuing members of Plaintiff associations have customers in this District, and therefore will feel the burdens of the challenged Rule in this District. *See* PI Reply 6. But, as this Court has already recognized, "[t]he fact that there are customers of businesses in the Northern

14

District of Texas that will *potentially* feel the effects of the Rule does not . . . represent a substantial part of the events giving rise to the claim." *See* May Transfer Op. 9. If that were enough, there wouldn't be "a city in the country where venue would not lie, as every city has customers who may potentially be impacted by the Rule." *Id.* That would read out of the statute the requirement that a "substantial" part of the events or omissions have occurred in the venue.

Instead, that prong of the venue statute properly looks just to "the defendant's conduct, and where that conduct took place, rather than focusing on the activities of the plaintiff." *Munro v. U.S. Copyright Off.*, No. 6:21-cv-00666, 2022 WL 3566456, at *2 (W.D. Tex. May 24, 2022), *report and recommendation adopted*, 2022 WL 17400772 (W.D. Tex. Sept. 15, 2022). That would be where the Bureau issued the Rule, in Washington, D.C.

Even if, as Plaintiffs would have it, "events and omissions" venue were to lie wherever regulated entities felt the *effects* of the challenged Rule, Plaintiffs would still have to identify a *plaintiff* that would be subject to a burden within the forum should the contested agency action take effect. *Career Colls.*, 2023 WL 2975164, at *2–3 (refusing to allow an associational plaintiff to rely on effects felt by members to establish venue under § 1391(e)(1)(B)). But none of the Plaintiffs are burdened because they are associations, not larger card issuers subject to the Rule. Besides, even if the burdens of their non-party members counted (and they don't), a large card issuer based *elsewhere* is not burdened *in this district* just because it has customers in Fort Worth. The Court should thus find that a substantial part of the events or omissions did not take place in Fort Worth, so venue is not proper here under § 1391(e)(1)(B).

The question of remedy remains. Under § 1406, a court handling "a case laying venue in the wrong division or district" may "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The court

has discretion to decide whether transfer or dismissal is appropriate. *See Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022) (noting that, although courts "should generally" dismiss a case filed in an improper venue, they "retain[] discretion to transfer it to a proper venue if such a transfer would serve 'the interest of justice'"); *Sundell v. Cisco Sys. Inc.*, 111 F.3d 892 (5th Cir. 1997) (per curiam) ("We read § 1406 as again giving the district court discretion to decide which course of action to follow."). Transfer to D.D.C. would serve the interests of justice here. Although the case is still relatively early along, the parties have already litigated the initial propriety of Plaintiffs' request for a preliminary injunction, and Defendants' motion to dissolve the preliminary injunction the Court put in place in May is pending. Allowing this case to continue in a venue all parties concede is proper would provide for the orderly resolution of the issues presented by that motion. Dismissing the case, by contrast, would result in immediate dissolution of the preliminary injunction and would risk setting off yet another round of emergency briefing on preliminary relief should Plaintiffs or other interested parties choose to refile their challenge to the Bureau's Late Fee Rule in another venue. The Bureau therefore respectfully requests that the Court transfer this litigation to D.D.C. after determining that venue is improper here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Fort Worth Chamber of Commerce for lack of standing. The Court should then accordingly determine that venue is improper in this District and transfer the case to D.D.C. under 28 U.S.C. § 1406.

DATED: July 29, 2024                    Respectfully Submitted,

                                        SETH FROTMAN
                                        *General Counsel*

                                        STEVEN Y. BRESSLER
                                        *Deputy General Counsel*

KRISTIN BATEMAN
*Assistant General Counsel*

*/s/ Stephanie B. Garlock*
STEPHANIE B. GARLOCK*
*Counsel*
D.C. Bar No. 1779629
JUSTIN M. SANDBERG*
*Senior Counsel*
Ill. Bar No. 6278377
JOSEPH FRISONE*
*Senior Counsel*
Va. Bar No. 90728
Consumer Financial Protection Bureau
1700 G St. NW
Washington, D.C. 20552
Stephanie.Garlock@cfpb.gov
Justin.Sandberg@cfpb.gov
Joseph.Frisone@cfpb.gov
(202) 435-7201 (Garlock)
(202) 450-8786 (Sandberg)
(202) 435-9287 (Frisone)
(202) 435-7024 (fax)

*Admitted pro hac vice

*Counsel for Defendants the Consumer
Financial Protection Bureau and Rohit
Chopra*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2024, a true and correct copy of this document was

served electronically by the Court's CM/ECF system to all counsel of record.

*/s/ Stephanie B. Garlock*
STEPHANIE B. GARLOCK